## THE STATE v. WILEY AND WILLIAM LAYCOCK, *Appellants*.

### Division Two, November 9, 1897.

1. **Criminal Law:** ASSAULT: INDICTMENT. An indictment under section 3489, Revised Statutes 1889, for maliciously stabbing another, need not charge that the weapon used was a deadly and dangerous one, nor one likely to produce death or great bodily harm.

2. ———: PRACTICE: EVIDENCE. A witness for the purpose of impeachment was permitted to state, over the objection of defendant, a conversation had with *defendant's* witness, without first fixing the time and place at which the conversation occurred. *Held* not reversible error when the record shows that the testimony was excluded from the jury immediately after being made.

3. ———: RECALLING WITNESSES. In a criminal trial it is discretionary with and not error for the trial court, after the case is closed, to allow a witness to be recalled, at the request of a juror, for the purpose of asking the witness whether the night on which the difficulty occurred was cloudy or moonlight.

4. ———: PRACTICE: FAILURE TO GIVE INSTRUCTIONS. The defendant, in order to avail himself of the omission by the trial court of proper instructions, must call the court's attention to the matter before the case is finally submitted to the jury.

5. ———: ———: EVIDENCE. Failing in the motion for a new trial to raise the question of the admissibility of certain evidence, the defendant can not raise it for the first time in the Supreme Court.

*Appeal from Phelps Circuit Court.*—HON. C. C. BLAND,
Judge.

AFFIRMED.

*William C. Kelly* for appellants.

(1) The indictment does not aver and charge
that the weapon used on Hopkins was a deadly or
dangerous one, and one likely to produce death or great
bodily harm, as the law requires, and is therefore bad,
and the lower court should have granted a new trial.
R. S. 1889, sec. 3489. (2) The trial court erred in
admitting J. M. Diehl to testify over the objections of
the defendant's attorney of an impeaching question
when he could not fix the time. After Diehl testified
the court excluded his evidence, but it had done its
work to mislead the jury. (3) The court below erred
in calling Fred Muench after the case was closed at the
request of one of the jurors, and after the introduction
of the almanac to prove that the eighteenth of Septem-
ber, 1895, was not a moonlight night, for the reason
that Fred Muench testified in his evidence in chief that
it was a moonlight night, and the almanac was to im-
peach him and others. (4) The court erred in not
giving all the law arising on every phase of the case,
and it is the duty of the court to give the instructions,
whether asked or not. *State v. Patrick*, 107 Mo. 171,
and cases cited.

*Edward C. Crow*, Attorney-General, and *Sam B.
Jeffries*, Assistant Attorney-General, for the State.

(1) The objection that the indictment is insuffi-
cient because it fails to charge the offense to have been
committed with a dangerous and deadly weapon is not

well taken. *State v. Keele*, 105 Mo. 38; *State v. Chumley*, 67 Mo. 43; *State v. Elvins*, 101 Mo. 244; *State v. Burk*, 89 Mo. 635; *State v. Jones*, 68 Mo. 197. (2) At the close of the case, and after defendants had closed in rebuttal, the court permitted the State to introduce the court stenographer in rebuttal to defendants' testimony, which had been inadvertently overlooked by the State. Defendants insist that in this the court committed reversible error. Such matters are within the sound discretion of the trial court. *State v. Daubert*, 42 Mo. 239; *State v. Linney*, 52 Mo. 40; *State v. Buchler*, 103 Mo. 203. (3) The evidence of Diehl was withdrawn from the jury at the suggestion and on motion of the defendants, and being so withdrawn, they were in nowise prejudiced by it. *State v. Clayton*, 100 Mo. 520; *State v. Lett*, 85 Mo. 54. (4) Defendants, in their motion for a new trial, raise the point that the court failed and neglected to instruct the jury on all points of law arising from the evidence in the case. When an objection on this account is not presented until the motion for a new trial is filed, it comes too late. The matter should have been excepted to and called to the trial court's attention at the time the failure occurred. *State v. Nelson*, 132 Mo. 196; *State v. Paxton*, 126 Mo. 513; *State v. Cantlin*, 118 Mo. 111; *State v. DeMosse*, 98 Mo. 340; *State v. Foster*, 115 Mo. 448. (5) Defendants complain in particular that an instruction on self-defense should have been given. We submit from the careful examination of the record the question of self-defense nowhere enters into the controversy or trial of the case. Defendants maintained throughout the whole of the trial that they did not do the cutting and at no time, either during the trial or the difficulty, did they claim to have acted in self-defense.

BURGESS, J.—At the September term, 1895, of the circuit court of Phelps county, defendants and one George Laycock were jointly indicted by the grand jury of said county for assault with intent to kill one William Hopkins, on purpose and with malice aforethought. At the September term, 1896, of said court the defendants herein were tried and convicted, and the punishment of each fixed at two years' imprisonment in the penitentiary. From the judgment and sentence they appeal.

It appears from the record that on the evening of the eighteenth of September, 1895, there was a party at the residence of one Fred Muench, a farmer in Phelps county, at which a number of persons were present, and among them were the defendants and one Bill Hopkins. Shortly after 12 o'clock Hopkins was standing in the south door of the house talking with Fred Muench, when a young man by the name of Whaling came from a lot some thirty or forty yards away in which Hopkins had hitched his mare, and in which direction defendants had gone a few minutes before, and told Hopkins that his mare was loose. Hopkins went immediately to the lot and found his mare loose, and the bridle that had been upon her lying upon the ground some six feet from the post to which she had been hitched. He picked up the bridle and spoke to her in rather a loud tone, when someone remarked: "Do you mean that for us?" Hopkins answered in the negative, at the same time remarking that whoever turned his mare loose had done a dirty trick. He then drove the mare within a few feet of where he had hitched her, and was trying to put the bridle on her when defendants approached the fence from the opposite side and climbed over to where he was standing. Defendant Wiley walked up and struck him with something over the head that staggered him,

and in return Hopkins struck Wiley with the bridle which he then had in his hand. Wiley then called, "Come on with me, Bill; God damn him, cut his heart out." Defendant William then made a rush at Hopkins and cut a gash across his face. Hopkins thereupon started and ran toward the house, with defendants following close after him. After reaching the yard gate they caught him, he striking them with the bridle, and defendant William striking him on the head with a knife. He then turned and ran to the porch of the house, with defendants in pursuit. When he reached the porch he turned and again struck William with the bridle over the head and shoulders, and then he ran into the house, where defendants followed him, cutting at him, William striking and knocking him down on the floor. After he was knocked down he hallooed "enough," and they were parted by Mr. Muench.

After the difficulty it was found that Hopkins was bleeding profusely from three cuts on the head and face, several scratches on the arm, one straight stab, and lip severed across the corner of the mouth. His shirt was cut in several places, and his eyes filled with blood. Defendants went home that night and on the following day they went to Stone county, where they were apprehended some three or four weeks afterward and sent back to Phelps county and lodged in jail.

Defendants contend that the cutting was done by some persons other than themselves; that the prosecuting witness, Hopkins, made the first attack upon them, and that they only acted in defense of their person.

I. The first contention of defendants is that the indictment is bad, because it does not charge that the weapon used upon Hopkins was a deadly or dangerous one, or one likely to produce death or great bodily harm.

The indictment charged that "Wiley Laycock,

George Laycock and Bill Laycock on the eighteenth day of September, 1895, and in the county of Phelps and State of Missouri, in and upon the body of Bill Hopkins, then and there being, feloniously, on purpose, and with their malice aforethought did make an assault and did then and there on purpose and with their malice aforethought feloniously stab him, the said Bill Hopkins, with knives, the length of the blade of which were four inches which they, the said Wiley Laycock, George Laycock and Bill Laycock, each then and there held in their hands with intent," etc.    The indictment was drawn under section 3489, Revised Statutes 1889, by which it is made a felony for any person "on purpose and of malice aforethought, to shoot or stab another," and it was said by this court in *The State v. Keele*, 105 Mo. 38, that "the felonious stabbing of another with intent to kill constitutes one offense under section 1262," Revised Statutes 1879, section 3489, Revised Statutes 1889.    "As to that offense, the statute is silent as to the character of the weapon used.    The indictment sufficiently follows the language of the statute defining the offense, and is sufficient."    Under the ruling in that case the indictment in the case at bar is unquestionably good.

II.    During the trial one J. M. Diehl was called as a witness on the part of the State for the purpose of impeaching a witness who had testified on behalf of defendants, and over their objection was permitted to testify to a conversation had by him with said witness for the defendants, without first fixing the time and place at which said conversation occurred, and the action of the court in this regard is assigned for error. The record, however, shows that the statements of this witness were excluded by the court from the consideration of the jury immediately after being made, and under such circumstances the admission of this evidence

certainly furnishes no ground for a reversal of the judgment.

III.   Another assignment of error is the action of the court in re-calling one Fred Muench, a witness for the State, at the request of one of the jurors after the case was closed, for the purpose of asking him what kind of night it was on which the difficulty occurred, whether dark or moonlight.   This was discretionary with the court and no error was committed in allowing the witness to be re-called for the purpose stated.

IV.   It is further insisted that the court erred in not instructing the jury on all the law arising on the facts in the case, and especially on self-defense.   A sufficient answer to this contention is, that there was no evidence upon which to predicate such an instruction; there was no self-defense in the case, and even if there was, in order to avail themselves of such omission on the part of the court, defendants should have requested the court to instruct upon that theory of the case before it was finally submitted to the jury, and this they did not do.   *State v. Paxton*, 126 Mo. 513; *State v. Nelson*, 132 Mo. 196.

V.   A still further contention is that the court committed error in admitting the evidence of Geo. A. Marling and John A. Rickman concerning a certain knife which was expressed to Marling by Rickman from Stone county, Missouri, but no such question was raised in the motion for a new trial, and can not be raised for the first time in this court.

VI.   What has been said with respect to the admission of the evidence of Marling and Rickman applies with equal force to the action of the court in refusing to permit the defendant Wiley Laycock while on the witness stand to testify as to what Price Hopkins did in reference to assaulting him with a pistol.   No point was made on it in the motion for a new trial.

VII.   A final contention is that the verdict of the jury was against the law and the evidence.   There is nothing disclosed by the record which justifies such contention.   The instructions covered every phase of the case, and the guilt of defendants established beyond any doubt.   The assault was unprovoked and without justification or excuse.

The judgment is affirmed.   GANTT, P. J., and SHERWOOD, J., concur.