## THE STATE v. JESSE F. KEENER, Appellant.

### Division Two, February 12, 1910.

1. **INFORMATION: Omission of Word "Did."** The information charged that defendant "did make an assault, and then and there, on purpose and of his malice aforethought, feloniously assault, beat and wound and stab him," etc. *Held*, that the omission of the word "did" before the words "feloniously assault" did not vitiate the information. That word, once used in that connection, is carried forward in meaning to the others, and its omission does not violate the rule that nothing is to be taken by intendment or implication in a felony charge.

2. ———: **Preliminary Hearing.** A motion to quash the information on the ground that no preliminary hearing was had, does not prove itself, and if unsupported by an affidavit or evidence, the overruling of it is not reversible error.

3. **ASSAULT: Deadly Weapon: Assumed in Instruction.** An instruction which tells the jury that "he who willfully, that is, intentionally, uses upon another at some vital point, a weapon, to-wit, a knife, a deadly weapon, must in the absence of qualifying facts," etc., is not reversible error in that it assumes that the knife is a deadly weapon, in view of the fact that the evidence shows the wounds inflicted by the knife were dangerous. [Distinguishing State v. Harris, 209 Mo. l. c. 438.]

4. **INSTRUCTIONS: Refusing Defendant's.** Where the court has fully and properly instructed the jury on the subject of the presumption of defendant's innocence and of the information being a mere formal charge and no evidence of his guilt, it is not error to refuse to give defendant's instructions on the same subjects.

5. **CROSS-EXAMINATION OF DEFENDANT.** The cross-examination of defendant need not be confined to a mere categorical review of the matters stated in his direct examination. Where defendant claimed his shoulder blade had been broken in the fight, and he had testified to an examination by one Wilson the next morning, it was not improper cross-examination to ask him if he did not on that occasion walk about the room on his hands and feet.

6. **NEW TRIAL: Newly-Discovered Evidence.** If it is apparent that the newly-discovered evidence would not probably produce a different result, and that it is cumulative, the court does not err in refusing a new trial because of it.

Appeal from Christian Circuit Court.—*Hon. Jno. T. Moore,* Judge.

AFFIRMED.

*G. Purd Hays* for appellant.

(1)  The motion to quash should have been sustained because the information in this case charges no offense under the laws of the State. Nothing can be taken by intendment or implication in a felony case. The knife is described as being six inches long, but has no blade. State v. Furgerson, 152 Mo. 92; State v. Daugherty, 30 Tex. 360; State v. Evans, 128 Mo. 406; State v. Rector, 126 Mo. 328; State v. Birks, 199 Mo. 263; State v. Woodward, 191 Mo. 617. That said information should have been quashed for the reason that the defendant was not accorded a preliminary hearing after his arrest as alleged in the motion to quash. Laws 1907, sec. 2476a, p. 243. (2)  By the giving of said instruction 10 the court tells the jury that a knife is a deadly weapon, which the court had no right to do; that was a fact for the jury to find from the evidence and not for the court to declare as a matter of law. State v. Grant, 152 Mo. 57; State v. Harris, 209 Mo. 423. (3)  That the court committed reversible error in compelling the defendant, over the objections of his counsel, to testify to things on which he was not examined in his examination in chief, and compelled the defendant to testify against himself. That defendant was compelled to tell things which were privileged and the evidence tended to prejudice the jury against him. The court invaded the rights of the defendant. Constitution, secs. 11 and 23, Bill of Rights; State v. Lehman, 175 Mo. 619. (4)  The court committed reversible error in refusing to grant the defendant a new trial on newly discovered evidence. Sec. 2688, R. S. 1899; State v. Moberly, 121 Mo. 604; State v. Murray, 91 Mo. 95.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) (a) The information charges the offense in the language of the statute, and is sufficient. It follows closely a form approved by this court. State v. Barton, 142 Mo. 453. Numerous decisions of this court attest the sufficiency of this information. State v. Dalton, 27 Mo. 13; State v. Harper, 69 Mo. 425; State v. Chandler, 24 Mo. 372; State v. Greenhalgh, 24 Mo. 373; State v. Hendrickson, 165 Mo. 264. (b) Defendant, in his brief, contends that the word ''did'' should have been placed before the words ''feloniously assault, beat and wound and stab him,'' etc., and that since it is not found in the position indicated, the information is bad, notwithstanding its conformity to the form approved in State v. Barton, 142 Mo. 453. In support of this view he cites several cases. While these cases are illustrative of the care with which this court exacts compliance with the constitutional guaranty that each defendant shall be properly advised, by the indictment or information, of the charge against him, yet they have no bearing upon the case at bar. The information in this case charges that defendant ''in and upon one Barney Gregory, feloniously, on purpose and of his malice aforethought, did make an assault, and then and there, on purpose and of his malice aforethought, feloniously assault, beat, wound and stab him,'' etc. The word ''did'' used in immediate connection with the charge of assault is carried, in meaning, by every rule of grammatical construction, into connection with the following clause. And applying well recognized rules of grammar to an indictment, falls far short of supplying omissions by intendment. State v. Barton, 142 Mo. 453. (c) The other ground of the motion to quash went to a mere irregularity in the previous proceedings. State v. Pritchett, 219 Mo. 703. This ground of the motion,

raising a question of fact, did not prove itself, and no evidence was offered by defendant on the hearing of the motion so far as the record shows. For this reason this ground of the motion cannot avail appellant here. State v. Craft, 164 Mo. 649. And generally the court's discretion in overruling motions to quash will not be reviewed. State v. Patterson, 159 Mo. 100; State v. Lucas, 147 Mo. 72. In fact, the evidence offered before the grand jury indicates in several instances that a preliminary examination was held and defendant discharged. This was sufficient to meet all requirements. State v. Pritchett, 219 Mo. 703. (2) The cross-examination of defendant as to his conduct the morning after the fight, incompatible with his statement that his shoulder blade was broken, was proper. State v. Myers, 221 Mo. 613; State v. Miller, 156 Mo. 85; State v. Miller, 190 Mo. 463. (3) Instruction 10 in this case does not necessarily fall within the rule laid down in the case of State v. Harris, 209 Mo. 438. There the instruction condemned predicated the specific intent to kill upon the use of the knife upon another at a vital part without requiring the jury to find that the knife used was a deadly weapon. In the tenth instruction in this case, also, the jury were not required to find the knife used by defendant to be a deadly weapon. The statute makes the stabbing of another on purpose, of malice aforethought and with intent to kill, the offense, regardless of whether the knife used is a deadly weapon. There are cases which seem to intimate that the tenth instruction is not bad. State v. Jones, 86 Mo. 626; State v. Musick, 101 Mo. 267; Jeff v. State, 39 Miss. 600. Further, in the case at bar the rule that the wounds given may sometimes characterize the weapon, conclusively, as dangerous (State v. Bowles, 146 Mo. 13, cited in State v. Harris, 209 Mo. 439), might be applicable.

BURGESS, J.—At the February term, 1909, of the circuit court of Christian county, upon an information charging him with having made a felonious assault upon one Barney Gregory, with intent to kill him, the defendant was found guilty of said offense, and his punishment assessed by the jury at two years in the penitentiary. In due time motions for new trial and in arrest of judgment were filed. The motion in arrest was overruled, but while the bill of exceptions recites that the motion for new trial was overruled, the record does not show that there was any order overruling the same. Defendant was sentenced upon the verdict, and appealed to this court.

The evidence for the State was, in substance, as follows:

On the night of November 2, 1908, a political "rally" was held in a skating rink in the town of Billings, in Christian county. Defendant and the prosecuting witness, Gregory, attended said "rally," both at the time being somewhat under the influence of intoxicants. They exchanged "hurrahs" for their respective candidates, each making use of remarks derogatory to the other's political favorite. The meeting being over, they repaired to the sidewalk in front of the skating rink, where words of anger passed between them. The defendant shoved Gregory away from him, whereupon Gregory struck the defendant. The latter then struck Gregory with a knife, and Gregory again struck defendant with his fist. Both men fell, Keener on top, but in the scuffle Gregory wriggled from under Keener and got on top. Defendant put his arm around Gregory, and was seen to stab him several times with a knife held in his right hand. After the combatants were pulled apart, defendant was heard to say, "Let me to him—I will fix him yet." Gregory was taken to a physician, who dressed his wounds. The physician testified that Gregory had received seven knife wounds, one of which was dangerous, and that he was bleeding

profusely. As to the wound which he characterized as dangerous, the physician said that it "would have killed him under conditions."

In his own behalf, defendant testified that he tried to avoid trouble with Gregory, and that the latter struck the first blow; that Gregory had a knife in his hand, and that he knocked it out of his hand in the exchange of blows; that Gregory drew from his pocket what defendant thought was a pair of knucks, and struck him therewith, breaking his left shoulder blade; that he fell and Gregory fell on top of him; that he, defendant, drew his knife, opened it with his teeth, and struck Gregory with his knife in order to protect himself, and that as soon as Gregory called for help, he stopped striking him with the knife.

Dr. J. P. Baird, by deposition, testified to the effect. that on November 4, 1908, he examined defendant, and found his collar bone broken, and a "bruise on top of the collar bone, appearing as if it had been done with a moderately blunt instrument;" that he found a contusion on defendant's left cheek, and a knife wound, about five inches long, in the left forearm, which wound was but skin deep, and that defendant at the time also complained of a bruise on the right side.

The evidence is quite conflicting, particularly as to which man was the aggressor, the evidence for the State being that the defendant struck the first blow, while that for defendant tended to show that Gregory began the fight.

Defendant filed a motion to quash the information, which motion was overruled by the court, the defendant duly excepting. Said motion assailed the information on two grounds, to-wit: (1) Because the information charged no offense under the laws of this State, and (2) because, according to the motion, no preliminary hearing had been accorded the defendant.

The information, leaving off the formal parts, is as follows:

"Fred W. Barrett, prosecuting attorney within and for the county of Christian, in the State of Missouri, informs the court, under his official oath and upon his best information and belief, that Jesse F. Keener, on or about the second day of November, 1908, in the said county of Christian, in the State of Missouri, in and upon one Barney Gregory, feloniously, on purpose and of his malice aforethought, did make an assault, and then and there, on purpose and of his malice aforethought, feloniously assault, beat, wound and stab him, the said Barney Gregory, with a large knife of the length of six inches, which was then and there a dangerous and deadly weapon likely to produce death and great bodily harm, which knife he, the said Jesse F. Keener, then and there had and held in his right hand, with intent then and there him, the said Barney Gregory, on purpose and of his malice aforethought, feloniously to kill and murder, contrary to the form of the statute," etc.

The information charges the offense in the language of the statute, and the intent is plainly charged. Defendant, however, insists that the information is bad, and that his motion to quash should have been sustained, for the reason that the word "did" is omitted from the charging part of the information. The information reads: "Did make an assault, and then and there, on purpose and of his malice aforethought," etc., and defendant maintains that the word "did" should have been placed between the words "and" and "then," and that its omission renders the information defective.

In the case of State v. Barton, 142 Mo. 450, the charge in the indictment was in the exact language of the information in this case, and said indictment was held good. The auxiliary "did," used in immediate connection with the charge of the assault, is carried, in meaning, by every rule of grammatical construction, into connection with the following clause, and thus

understood and applied, does no violence to the rule that nothing is to be taken by intendment or implication in a felony case. The cases cited by defendant in support of his contention fall far short of doing so, and are not in point.

As to the second ground of the motion to quash, it goes to a mere irregularity in the previous proceedings. [State v. Pritchett, 219 Mo. l. c. 703.] This ground raises a question of fact, which did not prove itself. So far as the record shows, no affidavit was filed, nor was there any evidence offered to prove that the defendant was not accorded a preliminary hearing, as required by section 2476a, Laws of 1907, p. 243, and for this reason the second ground of the motion fails. Generally, the court's discretion in overruling motions to quash will not be reviewed. [State v. Patterson, 159 Mo. l. c. 100; State v. Lucas, 147 Mo. l. c. 72.]

Instruction No. 10, for the State, is as follows:

"Gentlemen of the jury, the court instructs you that he who wilfully, that is, intentionally, uses upon another at some vital point, a weapon, to-wit, a knife, a deadly weapon, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this must be presumed to intend death as the probable and ordinary consequences of such an act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and from a bad heart."

Defendant criticizes this instruction on the ground that it was for the jury to find from the evidence whether the knife used was a deadly weapon, and not for the court to declare as a matter of law.

The information was drawn under section 1847, Revised Statutes 1899, which provides: "Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with in-

tent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by imprisonment in the penitentiary not exceeding ten years." It was held in the case of State v. Keele, 105 Mo. 38, that a felonious stabbing of another, with intent to kill, constituted one offense under said section, and that when the assault is charged to have been made with a certain knife, it is not necessary to also charge that said knife was a deadly weapon, as the statute as to that offense was silent as to the character of the weapon used. In State v. Laycock, 141 Mo. 278, 279, and State v. Bond, 191 Mo. 555, the same distinction is maintained between the first clause of the statute, which makes the shooting at or stabbing another one offense, and an asault with a deadly weapon, another and distinct offense. As said in State v. Harris, 209 Mo. l. c. 438, "the uniform construction placed by this court upon the first clause of section 1847 has been that it is not necessary to allege that the instrument with which the defendant stabs another is a deadly weapon, the allegation that the knife with which the defendant in this case stabbed the prosecuting witness was a deadly weapon was unnecessary and can be treated as surplusage, and it was not essential to prove that it was a deadly weapon to sustain the charge in the information, and, therefore, it was not necessary for the court to submit to the jury the question whether such knife was or was not a deadly weapon." In State v. Bowles, 146 Mo. l. c. 13, it is said: "A deadly weapon is any weapon or instrument by which death would likely be produced, when used in the manner in which it may appear it was used in the affray. . . . It does not follow because no witness testified to seeing the knife, or detailed its exact dimensions, there was no proof as to its dangerous or deadly character. The deadly effect it produced was confirmation strong of its lethal qualities." However, in the case of State v. Harris,

supra, wherein an instruction like to the one under dis-
cussion was given, such instruction was held erroneous
for the reason that the proof in that case was such that
it could not be assumed as a matter of law, either from
the size of the knife used, or from the wound inflicted,
that such knife was a deadly weapon, and that the court
erred in instructing the jury that "he who uses upon
another at some vital part a deadly weapon of any kind,
must in the absence of qualifying facts be presumed
to know that the effect is likely to produce death, and
knowing this must be presumed to intend death," etc.,
without leaving to the jury the determination of the
question whether the knife used was in fact a deadly
weapon, before indulging such presumption.  The rul-
ing in that case, whether or not consistent with the
prior ruling that it was unnecessary to allege or to
prove that the knife with which the prosecuting witness
was stabbed was a deadly weapon, does not affect the
case at bar, for here the proof of the deadliness of the
weapon used (if such proof was necessary to warrant
the presumption of malice, which we do not think),
was of a different and much stronger character than
that in the Harris case.  In that case the knife used
was a small pocket knife, and there was no proof that
the two wounds inflicted, or either  of them, was of a
dangerous character, although it appeared that the
prosecuting witness was seven or eight days in bed as
a result of such wounds.  In the case at bar, while there
does not appear any evidence as to the size or dimen-
sions of the knife used, it is shown that the wounds
inflicted were dangerous, that the prosecuting witness
was confined to his bed four weeks on account of said
wounds, and received regular medical attention during
that time.  The physician who attended him and ex-
amined his wounds testified as follows:

'They carried him in the office, and he was very
much exhausted, and he was bleeding from six wounds.

He had seven, but one there wasn't a great amount of blood coming from, but one that particularly drew our attention was one in the side that came in about one and three-fourths inches of the spinal column, and cut a rib into and penetrated the bowels. That is generally considered a dangerous wound. Then he had a stab wound right behind and under his shoulder that was bleeding profusely.

"Q. How deep was that? A. To the bone.

"Q. Did that strike the shoulder blade? A. Yes, sir, and then kinder bordered down; and he had one just over the heart, about one and three-fourths inches. This wound went to the ribs and seemed to have been cut a little glancing, and cut down and then came out, cutting the muscular tissue down to the bone; and then there was three on his arm which were not very dangerous, and then his two fingers were cut to the bone."

In answer to the question whether or not the said wounds were dangerous and likely to produce death, the witness said: "Yes, sir, a wound is considered dangerous. This wound in the side would have killed him under conditions."

In the light of this and other evidence hereinbefore stated, and in conformity to our views previously expressed, we must hold that the giving of said instruction numbered 10 was not error. It might also be said, in passing, that the language of the instruction in the Harris case, supra, was more general than in this, the words as to the weapon being "a deadly weapon of any kind," while in the instruction in this case the weapon "a knife," is specifically mentioned.

The defendant contends that the court erred in refusing to give instructions "A" and "B," asked by him. These instructions were merely as to the presumption of defendant's innocence, and as to the information being a mere formal charge, and no evidence of defendant's guilt. It is sufficient to say, in answer to the said contention of defendant, that the

matter of said refused instructions was fully and properly covered by other instructions given by the court.

It is insisted by defendant that "the court committed reversible error in compelling the defendant, over the objections of his counsel, to testify to things on which he was not examined in his examination in chief," and in confirmation of defendant's statement in this regard he refers us to page 108 of the record. In that and succeeding pages the prosecuting attorney, on cross-examination, questions the defendant with respect to the result of an examination of his wounds, which examination had been made by a Mr. Wilson, in the jail, the morning after the fight, and also as to defendant's conduct on that occasion. The defendant, in his direct examination, testified that one Abe Wilson, who in another place is called "Doctor," visited him in the jail, examined his wounds, and gave him some liniment therefor, but that the examination given him was slight. "He just pulled down my shirt, and fingered around some, and said this wasn't broken," the reference doubtless being to the shoulder blade, which according to defendant's testimony was broken. The prosecuting attorney, in cross-examining the defendant, asked him if he did not tell Wilson, while examining his wounds, that he was not hurt much, and the defendant answered, "I don't think I did." Then the question was asked if he, the defendant, did not walk on his hands and feet all over the floor at the time of his examination by said Wilson. To this question defendant's counsel objected on the ground that "the matter was not gone into in the direct examination." The court refused to sustain the objection, and told the prosecuting attorney to ask the question, to which action of the court defendant duly excepted. The defendant's answer to said question was, "I don't know —I was feeling mighty bad along about that time—it was a cold place in there."

This court, in construing the statute providing for the cross-examination of a defendant in a criminal case, had repeatedly said: "When the statute says, 'A defendant shall be liable to cross-examination as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case,' it does not mean that the defendant can take the stand, and in answer to one or two .well-prepared interrogatories sweep away the whole structure of the State's case, and then remain immune from a cross-examination on the issue thus tendered. Cross-examination, from time immemorial, has been the great test of credibility of any witness." [State v. Myers, 221 Mo. 598; State v. Miller, 190 Mo. l. c. 463; State v. McKenzie, 102 Mo. l. c. 632; State v. Barrington, 198 Mo. l. c. 81; State v. Cunningham, 154 Mo. l. c. 174.] The cross-examination need not be confined to a mere categorical review of the matters stated in the direct examination, but the same may be employed as a means to test the truth of the evidence given in such direct examination. [State v. Myers, supra; State v. Miller, 156 Mo. l. c. 85; State v. Fisher, 162 Mo. l. c. 169.] We do not think the court committed error in overruling counsel's objection to the question alluded to, and the point is ruled against the defendant.

A further insistence is that the court erred in refusing to grant the defendant a new trial on newly-discovered evidence. In support of this ground of his motion for new trial the defendant filed an affidavit as follows:

"Jesse F. Keener, being duly sworn, upon his oath says that since the trial of his case in the circuit court, he learned of the evidence of William Mayden, who resides at Billings, Missouri; that he is informed, and believes, that he can prove by the said William Mayden that the next morning, very early, he picked up ‥ o knives at the exact place of the fight with Barney

Gregory, and that he believes that he can prove that
one of the knives is the knife that belongs to Barney
Gregory, the prosecuting witness, and the one that said
Gregory cut the defendant with on the night of the
fight; that he had no knowledge of the facts known
by the said William Mayden, and that he has used
due diligence in preparing for trial, and that had he
known that Mayden was so material a witness he would
have procured his evidence on the trial of said cause;
that said Mayden's evidence can be secured in support
of his motion for a new trial, and defendant prays
the court to give him time to procure the evidence of
the said William Mayden in support of his motion for
new trial." This affidavit was signed and sworn to
by the defendant. Counsel for defendant also filed
an affidavit of about the same tenor, except that he inti-
mates that he learned of this evidence before the con-
clusion of the trial; that he went immediately to the
court and informed him of what Mayden would swear,
"and asked the court that he be permitted to procure
said Mayden's evidence, and the court said he would
see, and that was the last of the matter." Accom-
panying said affidavit was one by the said Mayden,
to this effect: that about daylight, the morning after
the fight, he visited the scene thereof, and found and
picked up two pocket-knives there; that afterwards
Barney Gregory came to him and asked the affiant to
give him his knife, but that he refused to do so; that
he never told the defendant or his attorney that he
found said knives but that he told the prosecutor of
such fact, and that the prosecuting attorney did not
subpoena him as a witness; that he, the affiant, was not
related to any of the parties interested in the proceed-
ings.

The frequently-announced rule of this court with
respect to affidavits in support of a motion for a new
trial on newly-discovered evidence is as follows: "The
party must show, first, that the evidence has come to

his knowledge since the trial; second, that it was not owing to the want of due diligence that it did not come sooner; third, that it is so material that it would probably produce a different result if the new trial were granted; fourth, that it is not cumulative only; fifth, that the affidavit of the witness himself should be produced, or its absence accounted for; and, sixth, that the object of the testimony is not merely to impeach the character or credit of a witness." [State v. McKenzie, 177 Mo. 699; State v. Nettles, 153 Mo. 468; State v. Musick, 101 Mo. 260; State v. Welsor, 117 Mo. 570; State v. McLaughlin, 27 Mo. 112.]

It will be seen that the affidavit of the defendant falls short of showing that the evidence alluded to was so material that it would probably produce a different result if the new trial were granted, or that the object of such testimony was not merely to impeach the character or credit of a witness.

Indeed, it is difficult to see how such evidence, if introduced at the trial, could produce a different result. Exclusive of his own testimony, five witnesses testified for defendant at the trial, none of whom stated that the prosecuting witness had a knife in his hand at the time of the difficulty. These witnesses were all close by the combatants during the fight, and detailed all that occurred, and if the prosecuting witness had a knife in his hand it is beyond the bounds of probability that they could have missed seeing it, or, having seen it, have overlooked mentioning such fact while testifying for the defendant. There was an electric light near by, and there was nothing to prevent their seeing all that occurred. One of defendant's said witnesses testified that he drew the combatants apart, and took from the defendant the knife he had used upon the prosecuting witness, and kept the same, but he did not mention or intimate that Gregory had a knife.

In view of such evidence, it can hardly be said that the newly-discovered evidence mentioned in the af-

fidavits, if introduced at the trial, would be of any benefit to the defendant. Besides, it is shown to be merely cumulative, and as such falls short of fulfilling the requirements as to newly-discovered evidence. The court, therefore, did not err in refusing to grant defendant a new trial on the ground mentioned.

We have closely examined the record, and find no reversible error therein. The judgment should be, and is, affirmed. All concur.