## STATE v. HIGGERSON, Appellant.

|157   395|
|170   ¹397|

### Division Two, June 26, 1900.

1   **Self-Defense as Defense.** Unless defendant seeks and brings on the difficulty with the design to wreak his malice, he does not forfeit his right of self-defense.

2.   **Felonious Assault: INSTRUCTIONS FOR COMMON ASSAULT.** Where one is indicted for felonious assault, and by the evidence is either guilty of maliciously cutting another with a knife, or entitled to an acquittal because of having acted in self-defense, there should be no instruction for common assault.

3.   ————: CUTTING WITH A KNIFE. When a deadly weapon is used in making an assault upon a person, such as a knife, the law, in the absence of countervailing testimony or circumstances, presumes malice.

Appeal from Cooper Circuit Court.—*Hon. T. B. Robinson,* Judge.

REVERSED AND REMANDED.

*W. G. & G. T. Pendleton* for appellant.

Instruction 1 is manifestly erroneous being a decided comment upon the evidence, in undertaking to tell the jury what was the sum of certain facts in evidence, from which it was for the jury, and not the court, to deduce a conclusion. The facts recapitulated in said instruction were, in evidence merely to show the existence of another fact, which was to be found by the jury, namely: that prosecuting witness had reasonable cause to apprehend that defendant was about to do him some great personal injury; and "when one fact or piece of evidence is merely used to show the existence of another fact which is to be found by the jury, the

court can not, by way of instruction, direct the jury that the inference is warranted." State v. Sivils, 105 Mo. 530; Chouquette v. Barada, 28 Mo. 491; Carroll v. Paul, 16 Mo. 227; Rose v. Spies, 44 Mo. 20; Meyer v. Railroad, 40 Mo. 151; State v. Smith, 53 Mo. 267. Instructions in criminal cases which are in the nature of a comment on the evidence are in violation of the express provisions of the statute on the subject. R. S. 1889, sec. 4220; State v. Holmes, 17 Mo. 379; State v. Sivils, 105 Mo. 530; State v. Fairlamb, 121 Mo. 137. And even though the comment is correct, such fact does not cure the vice of instructions which comment on the evidence. Jones v. Jones, 57 Mo. 138.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The court committed no error in refusing instructions numbered 1, 2 and 3, offered by defendant for the reason that instructions 9 and 10, given by the court, covered the same ground. Where the instructions given fully and fairly state the law, refusal of others of the same effect will not constitute error. State v. Maher, 132 Mo. 279; Tyler v. Hall, 106 Mo. 313; State v. Partlow, 90 Mo. 608. (2) The case can not be reversed on account of instruction 11, since instructions 9 and 10 throw such light upon it that when read in connection with them, it is not prejudicial to defendant. In determining whether the judgment should be reversed for error in a single instruction, such instruction should be read in connection with all the instructions in the case. Noble v. Blount, 77 Mo. 235; Schooler v. Schooler, 18 Mo. App. 69. For instructions are to be considered in their entirety and not as though each separate instruction was to embody the whole law in the case. McKeon v. Railroad, 43 Mo. 405; Smith v. Culligan, 74 Mo. 387; Garesche v. St. Vincents College, 76

Mo. 332; Easley v. Railroad, 113 Mo. 236; Burdoine v. Trenton, 116 Mo. 358; Meade v. Railroad, 68 Mo. App. 92.

GANTT, P. J.—The defendant was indicted in the circuit court of Cooper county for assault with malice aforethought to kill Thomas A. Harris. He was duly arraigned, tried and convicted of a felonious assault without malice aforethought and his punishment assessed by a fine of $383. From that conviction he appeals.

The evidence tended to prove these facts.

All the parties lived in the neighborhood of Lamine Station in Cooper county. On the day of the difficulty the defendant had been to Boonville on business and returned to Lamine on the afternoon train. About the time he alighted from the train the prosecuting witness and his brother, Sterling Harris, crossed the track near the station and went to a woodyard near by and got a load of stove-wood. After loading their wagon they went back across the track to the business portion of the village, Thomas Harris riding and driving, and Sterling following walking behind and near the wagon. Defendant after his arrival started away from the station and then returned, he says to see about paying the freight on some timothy seed. On the part of the State the testimony tended to prove that the defendant saw Thomas and Sterling Harris as they went for the wood and walked back and forth from the station to the Swigglis store, north of the track, with his right hand in his overcoat pocket, and one witness testified she saw him take his knife out of his pants' pocket and then replace it in the same pocket.

As Thomas and Sterling Harris returned with the wood, they passed the defendant, on the opposite side of the street from him, whereupon the defendant called to Sterling Harris to come over, that he wanted to see him, to which Sterling replied, according to the State's evidence, that he didn't have

time; that he didn't want to see him, but if he wanted to see him come over to his side of the street. Defendant went over and when he came to Sterling the latter told him he could talk to Tom and left and went into the postoffice. Some say he told defendant to go to hell.

The State's witnesses say defendant cursed both Tom and Sterling Harris. After Sterling went into the postoffice, Thomas also went in. In a few moments Thomas came out and as defendant was walking toward him, gesticulating and swearing, Thomas ran to his wagon and seizing two pieces of the stove wood, threw one at defendant. According to some of the evidence the stick struck defendant on the side of the head, making a gash, while others testified it didn't hit him at all. When the stick was thrown, Thomas Harris and defendant each made a rush at the other, but defendant's son caught Thomas Harris and held him and Sterling Harris caught defendant, but defendant got close enough to cut at Thomas Harris and cut his clothing with his pocket knife. The parties were separated and no further injuries were committed.

The evidence disclosed that there was a feeling of enmity existing between the parties in regard to reports circulated about a member of defendant's family. There was evidence also that defendant called to his son to hold Thomas Harris and he defendant would cut his heart out.

The court gave the usual instructions on the presumption of innocence, reasonable doubt, credibility of witnesses, the several degrees of punishment, and then the following which were objected to by defendant:

"8. If you find that the defendant voluntarily brought on the difficulty with Tom Harris then in law he was the aggressor, and he can not be acquitted on the ground of self-defense, no matter how great or how imminent his peril may have become during the progress of such difficulty.

"9.   The court instructs the jury that although they may believe from the evidence that the defendant at the time of the difficulty between himself and the prosecuting witness, Tom Harris, used violent and abusive language toward said Harris yet no words however grievous would justify said Harris in assaulting and beating the defendant or in doing him great personal injury, and if the jury believe that said Harris upon the provocation of words alone ' assaulted the defendant, and was about to do the defendant great personal injury or bodily harm, then the said Harris was the aggressor (unless defendant voluntarily brought on a difficulty with said Tom Harris, as defined in instruction numbered 8) and the defendant had the right to repel force by force and use whatever force was necessary to prevent said Harris from doing him great personal injury, although the weapon used was a pocket knife, and if the jury so believe they should acquit the defendant.

"10.   The jury are instructed that if they shall believe from the evidence that the prosecuting witness Tom Harris in the absence of an attempt on the part of the defendant to first assault him, made an assault upon the defendant, and was about to do the defendant great bodily harm, then the defendant (unless he voluntarily brought on the difficulty as defined in instruction numbered 8), had the right to defend himself against said assault using only such force and means as might seem to a man of ordinary judgment to be necessary for the purpose under the circumstances, and in such case it would make no difference that said Harris believed that the defendant was about to assault him unless under the evidence it shall appear that such was in fact the intention of the defendant and that such intention was about to be carried into immediate execution.

"11.   The court instructs the jury that if they believe from the evidence that when witness Thomas Harris came

out of the store the defendant began to curse and abuse him; that he was gesticulating and motioning with his left hand, and that his right hand was in his pocket, and that as soon as Harris appeared defendant approached in an angry and threatening manner, then Thomas Harris had the right to get a stick of wood or any other weapon and use the same in the defense of his person."

The court refused to give to the jury the following instructions asked by defendant:

"1.   The court instructs the jury that although they may find from the evidence that defendant sought or voluntarily entered into a quarrel with the prosecuting witness Tom Harris, yet, unless they shall further find from the evidence that he made an assault upon him, then the said Harris had no legal right to assault the defendant and if the jury shall find from the evidence that said Harris did, without legal right so make an assault upon the defendant and was about to do the defendant great bodily harm, then the defendant had a right to repel said assault by force and to use whatever force was necessary to prevent said Harris from doing him great bodily harm, although the weapon used was a deadly weapon; and if the jury shall so believe, they will find the defendant not guilty.

"2.   The prosecuting witness Tom Harris had no right to assault the defendant with a club merely because the defendant was using threatening and insulting language towards him, nor unless the conduct of the defendant at the time, considered in connection with what he said, was such that the said Harris had good reason to believe and did believe that it was necessary for him to strike the defendant in order to protect himself from an assault by the defendant then about to be made upon him.

"3.   If the jury shall find from the evidence that the prosecuting witness Tom Harris made the first assault with-

out the right to do so as explained in these instructions, and that the defendant had good reason to believe, and did believe, that the said Harris was about to do him some great bodily harm, then the defendant had the right to meet such assault by the use of such force and means as were reasonable and necessary to protect himself from such assault, and if the jury shall believe from the evidence that the defendant acted in self-defense, as herein explained, they will find him not guilty."

I. Counsel for defendant ask a reversal on account of erroneous instructions given by the court and for the refusal to give correct instructions asked by defendant.

The ninth and tenth instructions, otherwise correct statements of the law, were rendered erroneous by the insertion into each of the clauses "unless defendant voluntarily brought on a difficulty with said Tom Harris" as defined in instruction numbered 8.

Upon the facts assumed, Harris had no lawful provocation to assault defendant and if he did under those circumstances then defendant had a right to defend himself, and use such force as was reasonably necessary to prevent said Harris from doing him great bodily harm, and the interpolated clause denied this right. Unless defendant sought and brought on the difficulty with a design to wreak his malice he did not forfeit his right of self-defense. Whether those conditions existed, the jury were to find from the evidence. [State v. Rapp, 142 Mo. 443.] For the same reason instruction numbered 8 is erroneous.

Instruction numbered 11 is erroneous because it is a comment on the evidence.

The court erred in refusing the defendant's three instructions. They correctly defined defendant's rights under the evidence.

State v. Higgerson.

There was no error in failing to instruct on common assault. Defendant was either entitled to an acquital because he acted in self-defense or he was guilty of a higher grade of crime than a common assault.

When a deadly weapon is used in making an assault upon a person, the law, in the absence of countervailing testimony or circumstances, presumes malice and that he intended the natural consequences of his act. [State v. Musick, 101 Mo. 260.]

The judgment is reversed and the cause remanded for a new trial.

*Sherwood* and *Burgess, JJ.,* concur.