## THE STATE v. GARRETT, Appellant.

### Division Two, December 2, 1902.

Self-Defense: BRINGING ON DIFFICULTY. One may be entitled to acquittal on the ground of self-defense, though he brought on the difficulty, it not having been with felonious intent.

Appeal from Cooper Circuit Court.—*Hon. Jas. E. Hazell*, Judge.

REVERSED AND REMANDED.

*John Cosgrove* for appellant.

Instruction 9, given on part of the State, is erroneous. This instruction, in effect, told the jury that if defendant by any acts, that is, by the use of approbrious or insulting language toward the witness, Harris, brought on the difficulty, if assaulted by Harris, he was deprived of the right of self-defense. In a word the instruction told the jury that insulting, profane and approbrious language authorized Harris to assault the defendant, and that defendant had no legal right or authority to defend himself. The law is otherwise. State v. Gamble, 119 Mo. 427.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General for the State.

Instruction 9 is erroneous because it does not require the jury to find that the defendant entered into the difficulty with an evil intent, but simply states that if the jury found that the defendant willfully entered into the difficulty, or by any willful act of his brought on the difficulty mentioned in the evidence, then he can not be acquitted on the grounds of self-defense. Guided

by the controlling decisions upon this proposition, this case must be reversed.

SHERWOOD, P. J.—The defendant, a negro, comes to this court on appeal from the Cooper Circuit Court, where, upon an information charging him with assault with intent to kill one Wm. A. Harris, by shooting at him with a pistol, he was found guilty, his punishment assessed at three years in the penitentiary and judgment went on the verdict. The trouble in this cause arose out of the following circumstances:

Wm. A. Harris was the owner of a livery stable in Boonville, and hired a team of horses and a buggy to one John Drew, a negro, who wanted to drive out into the country. Drew, the horses having been hitched to the buggy, drove it away from the livery stable. A few minutes thereafter, Harris saw his team coming up the street with two negro boys, defendant and Roy Field, in it, who were driving. Drew, it seems, had at first taken defendant into the buggy with him, and then when Drew got out of the buggy and went into Joe Stephens's drugstore, Roy Field got into the buggy, and then he and defendant drove off down street, and in a few moments returned and stopped again in front of Stephens's drugstore, when Harris, accosting defendant, demanded to know what defendant was doing with that team, and ordered him to get out of the buggy. This order was repeated three or four times, when defendant told Harris (as defendant states) that "John was in Mr. Stephens's drugstore," and he, defendant didn't know that he had to get out of the buggy, or something like that, when defendant after being ordered to get out, as above stated, finally said (so Harris states): "I can get out of your damn buggy; I don't give a damn for you or your old buggy either; I'll fix you," and began to crawl out of the buggy. Harris then took the buggy whip out of the hand of the other boy, who was driving, or from the socket, and struck defendant with the loaded end of the whip just as he was in the act of getting out of the buggy, or just as he got out, Harris could not re-

member which.   After defendant got out of the buggy
and stepped back ten or fifteen feet he drew his pistol
and shot.   Harris did not know whether defendant had
got on the ground before he struck him, or whether he
struck him while the latter was in the buggy.   On his
cross-examination Harris, in substance, said that he was
excited and did not have a very clear conception of the
things that transpired; but he said he struck defendant
on the face and he fell or "kind o' dropped someway"
from the force of the blow; that he struck defendant
across the face with the loaded end of the whip, and
defendant fell on the opposite side of the buggy from
Harris.

There was nothing in the testimony already stated
to show that defendant either drew or fired his pistol
until after he was struck with the whip; and defendant's
own testimony shows that he did not and that at the time
he was struck the blow knocked out one of his teeth,
which tooth he exhibited on the stand when testifying.
He further testified that when he fired Harris had the
whip in his hands still and was attempting to get at him.

Among other instructions, the court, on behalf of
the State, gave this one:

"9.   The court instructs the jury that if the wit-
ness, Harris, owned the buggy and team mentioned in
evidence, and hired the same to one John Drew, and
afterwards the said John Drew, without the knowledge
or consent of said Harris, placed said buggy and team
in the possession of the defendant, then said Harris had
the right to demand and take possession thereof from
the defendant, and if you find from the evidence that
said Harris did, in a peaceable manner, attempt to take
possession thereof, and that thereupon the defendant,
by any willful act of his, brought on the difficulty men-
tioned in evidence, then he can not be acquitted in this
case upon the ground of self-defense, however imminent
his peril may afterwards have become."

This instruction was plainly erroneous under the
rulings in Rapp's Case, 142 Mo. 443; and Higgerson's
Case, 157 Mo. 395, in that they deny defendant the right

of self-defense if he merely "brought on the difficulty," no matter whether he brought it on with a felonious purpose or not.

The above cases, as well as numerous others from Partlow's Case (90 Mo. 608) down, assert the doctrine that absent a felonious intent in the first instance, a party is not placed beyond the pale of self-defense, even if he does "bring on the difficulty" as with *vexatious vagueness* that *loose term* is applied.

The State confesses the error of this instruction, and well it might.

Judgment reversed and cause remanded. All concur.