# THE STATE v. WILLIAM EASTHAM, Appellant.

**Division Two, February 27, 1912.**

1. **EVIDENCE: Testimony of Deceased Witness: At Trial ·of Accomplice.** A juror at the former trial of an accessory or accomplice in the homicide cannot testify for defendant what a deceased witness testified at that trial. It is only when a witness has testified in a former trial of the same criminal case that the testimony of such witness, if dead, becomes admissible.

2. ———: **Impeachment: Testimony at Preliminary of Accomplice.** It is always competent to discredit or impeach a witness by asking him if at the preliminary examination he had not testified to a state of facts at variance with his testimony at the trial, and to call other witnesses to prove what his testimony was at such examination, if during the trial his attention is called to the time and place of the prior inconsistent statement; and it matters not whether such prior statement was made in court, as a witness in the same or a different case, or made outside of court at a time when the witness was not under oath.

3. **INSTRUCTIONS: Self-Defense: Shooting in Defense of Brother: Not Specifying Crime.** An instruction which deprives defendant of the right to defend his brother, if such brother sought or provoked the difficulty in which deceased lost his life, regardless of the intent with which said difficulty was sought or provoked, is error. Nor should the instruction fail to inform the jury of what crime defendant is guilty if he killed deceased in protecting his brother after the latter had made a common assault upon deceased without felonious intent.·

4. ———: ———: ———: **Voluntarily Entering Difficulty: Intending Common Assault: Manslaughter.** The right of self-defense is not entirely destroyed by bringing on or voluntarily entering into a fight when only a common battery is intended and there is no design to take life or inflict great bodily harm; and if after wrongfully provoking a fight, intending only a common assault, the aggressor is forced to slay his adversary to save his own life, he is guilty of manslaughter in the fourth degree, but not of a higher crime; and if defendant's brother intended only an ordinary battery on deceased, the brother, after deceased assaulted him with a pistol, had the

right to kill deceased without being guilty of any greater crime than manslaughter; and if defendant saw and knew all that took place between his brother and deceased, defendant had the same right to protect his brother after deceased shot him that the brother had to protect himself. Consequently, there being evidence to establish these facts, an instruction telling the jury that they could convict defendant of murder regardless of the intent with which the brother began the assault, and thereby precluding a conviction of manslaughter, was error against defendant—although there was substantial evidence to support the verdict of murder.

5. ————: **Manslaughter: Necessary Defense of Brother.** And under such circumstances an instruction on manslaughter in the fourth degree is misleading and not applicable to the evidence, if it tells the jury that they may convict defendant of manslaughter, although the killing was not done in the necessary defense of his brother.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*J. L. Short, John H. Rainey* and *Ernest A. Green* for appellant.

(1) The court erred in refusing to permit the witness introduced by the defense, McAutrey, who served on the jury in the case of State v. George Eastham, involving the same state of facts as the one at bar, to testify as to what was, and to narrate the testimony of the witness Nellie McKinney, given in the trial of the case of State v. George Eastham—said witness Nellie McKinney being dead at the time of the trial of the cause at bar. Carp v. Insurance Co., 203 Mo. 340; State v. Able, 65 Mo. 357. (2) The court erred in permitting the witness introduced by the State, James K. Langford, over the objection and exception of the defendant, to testify by way of impeachment, as to what was the testimony of Josie Barnett, a witness for the defendant, in the preliminary examination in the case of State v. George Eastham;

said testimony being secondary and not the best evidence. R. S. 1909, sec. 5033; Bradley v. City, 90 Mo. App. 424; Estes v. Railroad, 111 Mo. App. 3. (3) The court erred in giving to the jury, of its own motion, instruction 5. Said instruction does not correctly declare the law applicable to the defense of defendant's brother, under the testimony in this cause. State v. Harper, 149 Mo. 524; State v. Darling, 202 Mo. 150; State v. Gilmore, 95 Mo. 560; State v. Partlow, 90 Mo. 608; State v. Little, 228 Mo. 305; State v. Webb, 216 Mo. 388; State v. Stultz, 97 Mo. 26; State v. Heath, 221 Mo. 589; State v. Gordon, 191 Mo. 124. (4) The court erred in giving to the jury, of its own motion and over the objection and exception of defendant, instructions 6 and 7, relative to the law of defense of one's brother; said instructions do not correctly declare the law as applicable to the facts of this case. State v. Harper, 149 Mo. 524; State v. Darling, 202 Mo. 150; State v. Gilmore, 95 Mo. 560; State v. Partlow, 90 Mo. 608; State v. Little, 228 Mo. 305; State v. Webb, 216 Mo. 388; State v. Stultz, 97 Mo. 26; State v. Heath, 221 Mo. 589; State v. Gordon, 191 Mo. 124.

*Elliott W. Major,* Attorney-General, and *John M. Dawson* and *Campbell Cummings,* Assistant Attorneys-General, for the State.

(1) The offer was to show what the deceased witness Nellie McKinney testified to in the George Eastham case. Appellant did not offer the evidence she gave; in other words, his offer was a narration on the substance of her evidence in the George Eastham case, be it competent or incompetent in this case. In order to have this exception avail him in this court, he should have offered the evidence, thereby informing the court that the evidence offered was material to the issue. For aught this court knows, the evidence of Nellie McKinney in the George Eastham case would have been wholly improper and immaterial to the facts

in this case. Furthermore, there were several eye-witnesses, both for the State and appellant, who testified in detail to all the facts and circumstances surrounding the killing; therefore, whatever Nellie McKinney's testimony might have been in the George Eastham case, she could not have seen more or less that occurred at the killing than some or all of the other witnesses, and the rejection of the evidence was not reversible error. Moreover, if appellant desired to produce before the jury the evidence of Nellie McKinney, he should have produced the shorthand notes of the court stenographer. Bradley v. Spikardsville, 90 Mo. App. 424; Estes v. Railroad, 111 Mo. App. 4. Witnesses can be impeached by showing they made contradictory statements in the former trial. Hamberger v. Rinkel, 164 Mo. 398; Underhill on Crim. Ev., sec. 238. (2) The appellant complains of instruction 5, in that said instruction does not correctly declare the law applicable to the defense of appellant's brother under the testimony in this cause. Appellant, to sustain this point, cites numerous authorities; however, it will only be necessary to notice the Partlow case, as the other authorities are founded upon the doctrine announced in that case. That case made the distinction between the right of perfect and the right of imperfect self-defense. This distinction has been kept in view by this court. How far and to what extent a defendant will be excused, or is excusable in law, must depend upon the nature and character of the act he was committing, and which produced the necessity that he should defend himself. If, however, the defendant was in the wrong, he himself was violating the law, or in the act of violating the law, and, on account of his own wrong, was placed in a situation where it became necessary for him to defend himself against an attack made upon himself, which was superinduced or created by his own wrong, then the law justly limits his right of self-defense and regulates it according to

the magnitude of his own wrong. This instruction announces the doctrine of this court in State v. Partlow, 90 Mo. 608; State v. Gordon, 191 Mo. 114; State v. Sebastian, 215 Mo. 58, 84. The instruction leaves it to the jury as to whether or not appellant had good reason to believe and did believe that his brother was in impending danger, and if he did believe it, then the instruction told the jury that appellant was justified in using such force as appeared to him from the surrounding circumstances to be reasonably necessary for the purpose of defending himself against such peril. The instruction does tell the jury that they must find that the danger to appellant's brother actually existed before appellant had the right to kill, but, on the other hand, it tells the jury that if they find from all the facts that appellant believed that great danger was about to befall his brother, and that peril was imminent, then and in that case, appellant had the right to defend his brother. 2 Bishop on Crim. Law (8 Ed.), sec. 701; State v. Beckner, 194 Mo. 299. Instructions 6 and 7 simply told the jury that if appellant's brother sought, provoked or brought on such difficulty, then appellant would be guilty, but that appellant would be justified in doing for his brother what the brother would be justified in doing for himself. We see no objection to these instructions. State v. Bailey, 190 Mo. 257. (3) A careful reading of the transcript of the bill of exceptions will show that the appellant did not except to the action of the court to the giving of instructions; therefore, the instructions cannot be reviewed here. An exception to an instruction should be made at the time it is given. An objection made for the first time in the motion for new trial is not timely. State v. Kretchmar, 232 Mo. 29; Harding v. Railroad, 232 Mo. 444.

BROWN, J.—At the November term, 1910, of the circuit court of Ripley county, defendant was convicted

of murdering one Charles Stacey, and appeals from a
judgment of that court fixing his punishment at thirty
years in the penitentiary. The homicide which re-
sulted in this conviction occurred on a public road in
front of the home of defendant's father, in Ripley
county, near an open spring. The evidence indicates
that defendant and his brothers Willis and George
were angry with deceased because of a report that de-
ceased had accused Willis of murdering his wife.

On Sunday, June 10, 1906, deceased passed the
Eastham home in company with a young lady, en route
to church. About noon of the same day, as he re-
turned from church, in company with several young
people, he stopped at the Eastham spring to drink.
Defendant and his brother Willis were at or near the
spring. After drinking, deceased started to leave,
when George Eastham, another brother of defendant,
appeared at the door of the Eastham home, some
twenty yards away, and hallooed to Willis Eastham
to "make Stacey take back the lies he had told."

According to the testimony of eight witnesses for
the State, Willis Eastham was at first disinclined to
precipitate any difficulty with Stacey, but defendant
and George Eastham demanded that the matter be set-
tled then. On hearing George halloo to Willis, de-
ceased stopped and said he did not want any trouble
then, but would see defendant at 2:30 that day. Some
of the State's witnesses testified that defendant drew
a revolver and walked up to within a few yards of de-
ceased and cursed him; that Willis then picked up some
rocks and demanded that Stacey take back the report
he had circulated. Stacey denied circulating the report
about Willis killing his wife. George Eastham then
ran up and began striking deceased with his fists;
whereupon defendant shot deceased several times. De-
ceased then drew a revolver and killed Willis East-
ham, and shot at George Eastham, wounding him
slightly. The shots fired by defendant caused Stacey,

the deceased, to fall and drop his pistol, whereupon George Eastham picked up the pistol and struck deceased over the head with it, crushing his skull. A physician testified to five gunshot wounds in the body of deceased; that any one of three of them was necessarily fatal; and also that the blows upon his head were likewise sufficient to produce death.

Defendant denied drawing his revolver until he saw a revolver in the hands of deceased; that his brothers, Willis and George, were both unarmed; and that he did not shoot until deceased had killed his brother Willis and was shooting at his brother George.

George Eastham testified that before he left his father's house he saw Stacey draw a revolver; and that he did not strike deceased, but only tried to grab the revolver out of his hand to prevent the killing of his brother Willis.

After the homicide, defendant fled from the State, and three or four years later was captured in the State of Arkansas.

Defendant seeks a reversal on account of the admission of alleged improper evidence on the part of the State; and the exclusion of legal evidence offered by defendant. He also contends that the instructions given by the court of its own motion contain reversible error.

## OPINION.

The record discloses that several months before defendant was placed on trial, his brother George had been acquitted of killing or participating in the killing of Charles Stacey; and one Nellie McKinney, since deceased, having testified at that trial, the defendant called one McAutrey, who served as a juror in said trial, and offered to prove by him the facts testified to by said deceased witness. The State objected to that evidence on the ground that the testimony of

Nellie McKinney was given upon the trial of a different case; and the court sustained the objection.

However much concert of action there was between defendant and George Eastham in the unfortunate tragedy which resulted in Stacey's death, the evidence of the deceased witness would not necessarily have been the same on both trials had she lived to testify again.

It is a well-known fact that a great many witnesses in criminal cases shade or color their evidence in proportion to the degree of their sympathy for or hatred of the person on trial. For this reason alone, the testimony given by the deceased witness in the trial of George Eastham was properly excluded at the trial of defendant. It is only when a witness has testified in a former trial of the same criminal case that evidence of such witness, if dead, becomes admissible. [State v. Porter, 74 Ia. 623.] The cases of State v. Able, 65 Mo. 357, and Carp v. Ins. Co., 203 Mo. l. c. 340, cited by appellant on this point, do not sustain his contention.

One Josie Street, who testified on behalf of defendant, was asked by the prosecutor if she did not cause that the defendant's brother, George Eastham testify to a state of facts at variance with her evidence in this case. Said witness denied making the statement attributed to her; whereupon the prosecutor, over the objection of defendant, called one J. K. Langford, the magistrate who held the preliminary examination of George Eastham, and proved by him that the evidence of said Josie Street, upon the said preliminary, was in conflict with her evidence as then given in this case. The court committed no error in permitting said witness to be impeached and discredited in this manner. It is always permissible to discredit a witness in that way, if during the trial his attention is called to the time and place where the prior inconsistent statement was made; and it mat-

ters not whether such prior statement was made in court as a witness in the same or a different case, or made outside of a court at a time when the witness was not under oath.

The court submitted to the jury the issues of murder in the first and second degrees and manslaughter in the fourth degree.

The defendant complains of instructions numbered 5, 6 and 7, given by the court of its own motion, attempting to define the defendant's right of self-defense and the right to protect or defend his brother; which instructions are as follows:

"5. The right to defend one's self or his brother against danger not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may have therefore killed Charles Stacey and still be innocent of any offense against the law, if at the time he shot the deceased he had reasonable cause to apprehend on the part of the deceased, a design to do his brother some great personal injury; and there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger he shot and at the time he did so, he had reasonable cause to believe, and did believe it necessary for him to use his pistol in the way he did to protect his brother from such apprehended danger, then, and in that case the shooting was not felonious, but was justifiable, and you ought to acquit him on the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actual or real or that the danger should have been impending and immediately about to fall. All that is necessary is that the defendant had reasonable cause to believe and did believe these facts.

"But before you acquit on the grounds of defense of his brother you ought to believe that defendant's cause of apprehension was reasonable. Whether

the facts constituting such reasonable cause have been established by the evidence you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you cannot acquit in such case, on the ground of self-defense, even though you may believe that the defendant really thought his brother was in danger.

"But on the other hand, Gentlemen, the law does not permit a person to voluntarily seek or invite a combat, or put himself in the way of being assaulted, in order that when hard-pressed he may have a pretext to take the life of his assailant. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any willful act of his, or where he voluntarily and of his own free will, enters into it, no matter how imminent his peril may become during the progress of the affray. The necessity being of his own creation, shall not operate to excuse him, nor is anyone justified in using any more force than is necessary to get rid of his assailant, but if he does not bring on the difficulty or provoke it, nor voluntarily engage in it, he is not bound to flee to avoid it, but may resist with adequate and necessary force until he is safe.

"Now, if you believe from the evidence in this cause that the defendant's brother, George Eastham or Willis Eastham, voluntarily sought or invited the difficulty in which said Charles Stacey lost his life or that they provoked or commenced, or brought it on by any willful act of their own, or that they voluntarily and of their own free will, engaged in it, then, and in that case, you are not authorized to acquit him on the grounds of self-defense or defense of his brother, and this is true no matter how violent his passion became, or how hard soever he was pressed, or how imminent his peril became during the progress of the affray. In determining who provoked or commenced the difficulty,

State v. Eastham.

or made the first assault, you should take into consideration all the facts and circumstances in evidence before you.

"6. And the jury is further instructed that defendant in defending a brother will not be justified in doing for him what the brother would not be justified in doing for himself. If, therefore, the jury believe from the evidence that defendant's brother had provoked and brought on a difficulty with the deceased, Charles Stacey, and that in the progress of such difficulty said brother of defendant was placed in imminent danger and that defendant knew that his said brother had sought or provoked or brought on such difficulty, then if the jury believe from the evidence that defendant, William Eastham, shot and killed Charles Stacey while thus engaged in the controversy with defendant's brother, you will find him guilty.

"7. The court instructs the jury that although they may believe from the evidence that the defendant, William Eastham, shot and killed Charles Stacey, yet if it is further shown by the evidence that such shooting was done for the purpose of preventing the commission of a felony upon defendant's brother or preventing said Stacey from doing said defendant's brother some great bodily harm, they will return a verdict of not guilty unless you further find from the evidence that defendant's brother sought or provoked or brought on the difficulty with said Stacey, then in that case you should find the defendant guilty."

These instructions correctly and elaborately declare the law of self-defense; but on the right of defendant to protect his brother, they miss the mark. It will readily be observed that they deprive the defendant entirely of the right to defend his brother, George, if such brother sought or provoked the difficulty in which Stacey lost his life, regardless of the intent with which said difficulty was sought or provoked.

There is no evidence on the part of either the State or defendant that George Eastham was armed; while there is direct evidence that he contemplated nothing more than an ordinary battery upon deceased until after the deceased shot Willis Eastham and began shooting at said George. Yet instruction numbered 7 tells the jury that they should convict the defendant if they find that George provoked the difficulty. It omits to inform the jury of what crime defendant is guilty in case he killed the deceased in protecting George after the latter had made a common assault on deceased without any felonious intent.

It is a well-settled rule of law in this State that the right of self-defense is not entirely destroyed by bringing on or voluntarily entering into a fight when only a common battery is intended and there is no design to take life or inflict great ·bodily harm. If after wrongfully provoking a fight intending only a common assault the aggressor is forced to slay his adversary to save his own life, he is guilty of manslaughter in the fourth degree, but not of a higher crime. [State v. Partlow, 90 Mo. 608, 1. c. 616; State v. Garrett, 170 Mo. 395; State v. Darling, 202 Mo. 150.]

In this case, if George Eastham intended only an ordinary battery upon Stacey, the deceased, he would, after Stacey assaulted him with a pistol, have had the right to kill his adversary without being guilty of any greater crime than manslaughter. Defendant saw and knew all that took place between George Eastham and the deceased; consequently, under the facts in this case the right to protect his brother George after Stacey shot him, was exactly the same—no greater, no less—than the right of George to protect himself. But the instructions hereinbefore set out would lead the jury to believe that they could convict the defendant of murder, regardless of the intent with which George Eastham began the assault. Under the defendant's

own evidence, he was at least guilty of manslaughter in the fourth degree, in killing Stacey; but the instruction on manslaughter was likewise misleading and not applicable to the evidence in the case, because it told the jury that they might convict the defendant of manslaughter, though the killing was not done in the necessary defense of his brother.

From what has been said, we do not wish to be understood as holding that the verdict of the jury finding the defendant guilty of murder is not supported by the evidence. There was strong evidence that deceased shot and mortally wounded Stacey before the latter drew his pistol or attempted to shoot anyone. The jury might well have believed that a conspiracy existed between the defendant and his brother to murder Stacey and that the apparent common assault of George Eastham on Stacey was only a pretext to give defendant an excuse to murder the latter.

However, as there was substantial evidence that defendant's brother George only intended a common assault and that defendant did not shoot until he saw the imminent peril of his said brother, he was entitled to have the jury instructed that if his brother George provoked the fight with deceased intending only a common assault, or intending only to grab the pistol out of the hand of deceased, and that after the fight had thus begun the deceased shot or was about to shoot George and that thereupon defendant killed deceased to save the life of his brother, then they should find defendant guilty of manslaughter in the fourth degree.

For the errors in the instructions hereinbefore designated, the judgment is reversed and the cause remanded. *Ferriss, P. J.,* and *Kennish, J.,* concur.