# THE STATE v. ERNEST BURNS, Appellant.

### Division Two, June 3, 1919.

1. **EVIDENCE: Hearsay Statements of Deceased's Wife.** Statements of deceased's wife, made several minutes after he was shot and after the neighbors had come in, that a man who would act like her husband had should not be put on her bed, but that if he would explain to the crowd why he had done as he had, and was justified, she would let him be put on her bed, but she would not if he didn't, were hearsay, were not *res gestae*, tended to show her partiality for the defendant and tended to prejudice the jury against him, and their admission was reversible error.·

2. ———: **Res Gestae.** In order that a statement or an act may be admissible as *res gestae*, it must be undesigned, instinctive, spontaneous, and arise out of an incident it seeks to describe. Statements by deceased's wife, made several minutes after her husband was shot and after the neighbors had come to the scene, are not *res gestae*.

3. **INSTRUCTION: Presumption: In Presence of Evidence.** An instruction telling the jury that, if defendant intentionally killed deceased by shooting him with a pistol, the law presumes such killing was murder in the second degree, is not permissible in the presence of evidence. Presumptions are invoked only when evidence is lacking.

4. ———: **Self-Defense: Voluntarily Entering Difficulty.** An instruction which tells the jury that if defendant voluntarily engaged in the difficulty, the right of self-defense is not available to him, no matter at what point or under what circumstances his voluntary action commenced, entirely takes away the right of self-defenses, and is erroneous.

5. **EVIDENCE: Uncommunicated Threat.** A threat made by deceased against, but not communicated to defendant is admissible in evidence, as throwing light upon the conduct of deceased at the time they began shooting at each other and as showing whether deceased was the aggressor.

6. **INSTRUCTION: Manslaughter: No Provocation.** Where there is no circumstance showing a provocation which would reduce the homicide to manslaughter in the fourth degree short of the evidence which would justify it altogether, no instruction for manslaughter in the fourth degree should be given; and the driving of defendant out of deceased's house, with opprobious words and

threats, there being no evidence that he was aroused to a frenzy of passion which for the moment obscured his reason, does not constitute provocation.

7. —— :——: **Self-Defense: Apprehension: Accidental Discharge of Pistol.** If deceased drove defendant out of his house, with a drawn weapon and curses, and with such threatening demeanor as to cause a reasonable belief that he was going to shoot, and defendant, in his excitement, in picking up his automatic pistol from his automobile, accidentally discharged it, and thereafter deceased fired, either in pursuance of original intention or because of the discharge of defendant's pistol, and defendant thereafter fired for the purpose of protecting himself, he was acting in self-defense, and was entitled to an acquittal, and there was no room in the case for an instruction for manslaughter in the fourth degree.

8. ——: ——: **Perfect Self-Defense: Apprehension.** If defendant fired his first shot intentionally with a reasonably induced belief that his life was in danger from deceased's weapon, he was not thereby deprived of perfect self-defense.

9. ——: ——: **Murder or Innocent.** If the evidence shows that defendant was either guilty of murder or was not guilty at all, no instruction for manslaughter in the fourth degree is warranted.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) The giving of the concluding portion of instruction 1 was error. As the shooting was detailed by eyewitnesses, there was no room for presumptions. State v. Solan, 207 S. W. 783; State v. Frame, 204 S. W. 10; State v. Willard, 192 S. W. 439; State v. Swearengin, 269 Mo. 186. (2) Instruction 2, on self-defense, is erroneous. State v. Rapp, 142 Mo. 447; State v. Hopper, 142 Mo. 482; State v. Walters, 156 Mo. 134; State v. Higgerson, 157 Mo. 401; State v. Patterson, 159 Mo. 561; State v. Garrett, 170 Mo. 397; State v. Gordon, 191 Mo. 126; State v. Feeley,

State v. Burns.

194 Mo. 321, 322; State v. Eastham, 240 Mo. 252; State v. Partlow, 90 Mo. 608; State v. Gilmore, 95 Mo. 560. (3) The motion for new trial does not specifically assign error for that the court failed to give an instruction on manslaughter in the fourth degree. Hence, this question is not before the court. State v. Levy, 262 Mo. 190; State v. Douglas, 258 Mo. 296; State v. Lewkowitz, 265 Mo. 636; State v. Katz, 266 Mo. 504; State v. Horton, 247 Mo. 663. (4) The statements of the wife of deceased made after the killing, and out of the presence of appellant, were erroneously admitted. State v. Coleman, 186 Mo. 160; State v. Brown, 188 Mo. 464; State v. Sherman, 264 Mo. 380. (5) There was substantial evidence upon which to base the verdict of the jury and judgment of the court. It is no ground for setting aside the verdict of the jury that it may be against the evidence. State v. Scott, 214 Mo. 261; State v. Yandell, 201 Mo. 662; State v. Espenschied, 212 Mo. 223.

WHITE, C.—The appellant on a trial in the Circuit Court of Pemiscot County was convicted of murder in the second degree, and appealed. One A. P. Bumpas was the victim of the homicide. The trouble between the two men arose out of the defendant's alleged attentions to the wife of Bumpas.

Mrs. Bumpas had charge of the post office at the town of Cooter in Pemiscot County. The defendant, Burns, was a mail carrier, and his route lay through Cooter, where the homicide occurred September 27, 1917. He carried the mail in his automobile. The two families of Bumpas and Burns were on friendly terms; and both men and their wives and children were at times taken for a ride in Burn's car. Previous to the time of the homicide the deceased had complained about Burn's attention to his wife, although he always said that nothing improper had occurred between them.

Burns was scheduled to leave Cooter at 3:10 each afternoon, and he usually arrived at that post office

about two p. m. During the hour or more while he remained there he was in the post office, usually alone with Mrs. Bumpas, the children being away at school. Nothing unusual was ever noticed in his conduct at such times. In April, prior to the homicide, he took Mrs. Bumpas to Caruthersville in his car, where she went to see a dentist, starting early in the morning and returning about 1:30. A conversation occurred between Bumpas and the defendant in relation to that trip, in which, as defendant's testimony tends to show, the deceased apologized for becoming excited about it. The deceased made various threats against the life of Burns, some of which were repeated to him a short time before the killing occurred. Bumpas was unsettled in his mind regarding the affair, and was torn between jealousy, and regret for what he sometimes confessed to be unjust suspicion. This appeared in his talk with other persons.

On September 27th Burns arrived as usual with the mail. Bumpas was at the time in the back yard, working on some kind of a building. Mrs. Bumpas was in the post office preparing the mail bags for delivery to Burns; two small daughters of Bumpas, Mary Lou, ten years of age, and Helen, seven years of age, were at the time in the house, in the rooms in the rear of the post office. No other persons were in or immediately near the post office. Several other witnesses testified to seeing some of the incidents of the tragedy from other points of view up and down the street in front. The two little girls testified for the defendant that their father came in from the back yard, went to his trunk in his bed room and took a pistol from it, and walked with it into the post office where Mrs. Bumpas and Burns were. Bumpas then ordered Burns to get out, and thereafter to put the mail on the porch and not come into the office. Mrs. Bumpas did not testify, and nothing further is shown of what occurred in the post office. The next that appears in the testimony was when Burns came out of the post office to where his

car stood about eight feet from the post office door, carrying the mail bags. Some witnesses stated that he had an automatic pistol in his hand; others stated that he had nothing in his hand except the mail bags. He went around his car to the opposite side for the purpose of depositing the mail bags in it. There was some evidence to show that at that time Bumpas was heard to order him hereafter to throw the mail bags on the porch and stay out of the post office. Burns said he answered that he was under bond to deliver the mail in the post office and was going to do it. Bumpas then was heard to say, "You will play hell, too," and turned and went back into the post office. Some of the witnesses heard the remarks of Bumpas, but did not hear what Burns said.

Next Burns was seen dodging around his car with his revolver in his hand. He stated that he got it out of the car after he went out. Immediately a shot was fired from a weapon of small calibre. Burn's revolver was a 32 automatic. At that time Bumpas was not in sight of the witnesses in front of the post office, and Burns swore that the first shot was accidental; that he picked up his automatic with his left hand and that it was discharged by accident. Almost immediately a shot from a weapon of larger calibre was heard. It was afterwards shown that Bumpas had a revolver of larger size in his hands and an empty cartridge was found in one of its chambers. Immediately in rapid succession Burns fired twice, and one of the shots struck Bumpas in the side above the hip, and he sank to the floor. According to some of the testimony he was still trying to get a shot at Burns when witnesses appeared on the scene to pick him up. These witnesses asked the defendant not to leave right away, and he told them to take the gun away from Bumpas and he would not leave. Burns cranked his car immediately and went away. When the witnesses arrived they found Bumpas on the floor. Mrs. Bumpas refused to allow him to be put on the bed. It was shown over the objec-

tion and exception of the defendant that she said he should not be put on her bed; a man that would act like he had. If he would explain to the crowd why he had done that, and he was justified, she would let him be put on the bed, but she would not if he didn't.

Bumpas was taken to Memphis, where he was operated on and died in a day or two.

I. Error is assigned to the admission by the court of the statement of Mrs. Bumpas explaining why she refused to let her wounded husband be put on her bed. This statement was clearly hearsay. While Wife's Statements. the matter of the statement tended to exculpate the defendant and put the blame of the encounter upon her husband, it further tended to show her partiality for the defendant and would undoubtedly have a tendency to prejudice the jury against him. Mrs. Bumpas was not a witness, and it was not admissible for the purpose of showing her bias in the case. It was not *res gestae,* and incompetent on any theory. In order that a statement or an act may be admissible as *res gestae* it must be undesigned, instinctive, spontaneous, and arise out of the incident which it seeks to describe. [State v. Reeves, 195 S. W. l. c. 1030, and cases cited.] The statement of Mrs. Bumpas occurred several minutes after her husband was shot and after the neighbors had come in. It was her deliberate explanation of her attitude in the matter. It was, in fact, an argument showing why she did not want her wounded husband placed on her bed.

II. The court in the instruction upon murder in the second degree correctly defined the Presumption. crime, but concluded the instruction with these words:

"Second: The court further instructs you that if you find from the evidence that the defendant Ernest Burns intentionally killed the deceased by shooting him with a loaded pistol in the manner set forth in the

foregoing instructions, and that such pistol was a deadly weapon, then the law presumes that such killing was murder in the second degree, in the absence of proof to the contrary, and it devolves upon the defendant to meet or repel that presumption, unless such presumption is met or repelled by the evidence introduced on behalf of the State."

This instruction regarding presumption of guilt in trial for murder in the second degree is never 'permissible when the evidence shows what the facts are as it did in this case. "Presumptions are invoked only when evidence is lacking." [State v. Swearengin, 269 Mo. l. c. 186; State v. Willard, 192 S. W. 439; State v. Frame, 204 S. W. l. c. 10; State v. Solan, 207 S. W. l. c. 783.] It was error therefore to give that instruction in that form.

III. The court in an instruction defining self-defense concludes with this qualification:

"Now, if you believe from the evidence in this cause, that the defendant voluntarily sought or invited the difficulty in which said A. P. Bumpas lost his life, or that he provoked, or commenced, or brought it on by any willful act of his own, or that he voluntarily and of his own free will engaged in it, then, and in that case, you are not authorized to acquit him on the ground of self-defense, and this is true no matter how violent his passion became, or how hard soever he was pressed, or how imminent his peril became during the progress of the affray. In determining who provoked or commenced the difficulty, or made the first assault, you should take into consideration all the facts and circumstances in evidence before you."

Self-Defense.

That instruction is erroneous, because it takes away entirely the right of self-defense. It asserts that if the defendant voluntarily "engaged in" the difficulty the right of self-defense is not available to him, no matter at what point or under what circumstances his voluntary action commenced. This instruction is quoted

.literally from the instruction copied in the opinion in the case of State v. Eastham, 240 Mo. l. c. 251, and there in effect condemned. [State v. Rapp, 142 Mo. l. c. 447; State v. Hopper, 142 Mo. l. c. 482; State v. Feeley, 194 Mo. l. c. 321-2.]

IV. The defendant offered the testimony of one Brooks to show a threat made by Bumpas against Burns which was not communicated to Burns, and this was excluded. This evidence was proper as throwing light upon the conduct of the deceased at the time of the killing and showing whether he was the aggressor. [State v. Edwards, 203 Mo. l. c. 546.]

Threat.

V. Appellant claimed that the trial court committed error in failing to instruct the jury authorizing a conviction of manslaughter in the fourth degree. The evidence did not warrant the giving of such an instruction.

Instruction for Manslaughter.

There are several inferences that may be drawn from the evidence. The one most unfavorable to the defendant was that, incensed by the language of the deceased, he drew his revolver and commenced firing before Bumpas went into the house to secure a weapon and in the subsequent exchange of shots he killed Bumpas. Another is that Bumpas drove him out of the house with curses and threats and with a drawn weapon which, however, he did not use until after the defendant had fired the first shot. Another version, still more favorable to the defendant, the one supported by his testimony and some other circumstances, was that Bumpas drove him out of the house with a drawn weapon and with curses and with such threatening demeanor as to cause a reasonable belief that he was going to shoot; that defendant in his excitement, in picking up his automatic discharged it accidentally, and thereupon Bumpas fired, either in pursuance of original intention or because of the discharge of defendant's weapon. The defendant thereafter fired for the purpose of

protecting his own life. In such case he was acting in self-defense and was entitled to an acquittal on that ground. Even if defendant fired his first shot intentionally with reasonably induced belief that his life was in danger from Bumpas's weapon, he was not thereby deprived of the right of perfect self-defense.

There are no circumstances showing a provocation which would reduce the homicide to manslaughter in the fourth degree short of the evidence which would justify it altogether. If Bumpas did drive him out of the house with opprobious words and threats the provocation was not sufficient. [State v. Sharp, 233 Mo. 1. c. 290; State v. Barrett, 240 Mo. 1. c. 169;   State v. Vest, 254 Mo. 1. c. 465-6.]   There was no evidence to show that the defendant was aroused to any frenzy of passion which would obscure for the moment his reason.   There was no assault upon the defendant nor attempted assault upon him except with a weapon which would have produced death and justified killing in self-defense.   Defendant was either guilty of murder or he was not guilty at all.   The only evidence of excitement on his part was his own statement that the deceased came out with his gun, threatening to kill him if he didn't go away, and defendant's hat almost fell off because in his fright his hair raised it from his head. In that case, if that were true, and the appearance was sufficiently reasonable to warrant the belief that Bumpas was about to kill him, his self-defense was perfect and an instruction on manslaughter unnecessary.   There is no room for a qualified self-defense which would reduce the offense to manslaughter as defined in State v. Eastham, 240 Mo. 1. c. 252.   If defendant brought on the difficulty it was with a felonious intent, for his first hostile act was to fire a deadly weapon at Bumpas.

The Attorney-General confesses error in the case, and for the errors noted above the judgment must be reversed.   There is, however, sufficient evidence to warrant a submission of the cause to the jury and for that

reason the cause will be remanded.  *Roy, C.* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. *Williams, P. J.,* and *Faris, J.,* concur; *Walker, J.,* dissents.