THE STATE v. WADE DOLLARHIDE, Appellant.—63 S. W. (2d) 998.

Court en Banc, October 19, 1933.

NOTE: See opinion on Motion for Rehearing, page 1013.

*Tom R. Moore* for appellant.

*Roy McKittrick,* Attorney-General, and *Harry G. Waltner, Jr.,* Assistant Attorney-General, for respondent.

WESTHUES, C.—Appellant was convicted of manslaughter, in the Circuit Court of Taney County, Missouri, and sentenced to eight years' imprisonment in the penitentiary.

The homicide occurred on Sunday, February 22, 1931. The deceased, Jim Knight, and defendant lived on nearby farms. The daughter of defendant had married the son of deceased. On the morning of the homicide the daughter and her husband and other members of the Knight family went to visit at the home of the Dollarhide family. The defendant was not at home at the time, having gone to a neighbor for a cow he had purchased. About noon the deceased appeared at the home of appellant and made some inquiry with reference to the whereabouts of appellant. He was told appellant had gone to a neighbor's. Deceased waited for appellant, who returned sometime during the afternoon. There is a sharp dispute as to what occurred from this time to the time of the shooting. It was admitted by all witnesses that the dispute, which led to the homicide, was over $1.50 which deceased claimed appellant owed him or his son for road work. The State's evidence tended to prove that when the argument over the amount due became heated appellant ordered deceased to leave the premises, and that deceased and his son complied with the demand; that appellant went to his house for a shotgun, followed deceased to a lane a short distance

from the home and deliberately shot deceased. It was shown that deceased received about eighty or more shot wounds in and about the head and shoulders.

Appellant's version of the affair, according to his testimony and that of members of his family, was that, when the dispute arose over the $1.50, deceased drew a revolver and threatened to shoot appellant unless he paid him the money; that appellant told deceased he did not want any trouble and ordered him to leave the premises; that deceased refused to leave and thereupon appellant went to the house, procured his shotgun and again demanded deceased to leave. Appellant testified that at this point deceased again drew his revolver and pointed it at appellant and stated he was going to kill him, whereupon appellant fired one shot directly at deceased causing him to stagger. But deceased again pointed the revolver at appellant and appellant fired a second time. Deceased died almost instantly as a result of these shots. A revolver was found on his person. Three shots were fired by appellant, the last of which appellant claimed was an accident and did not go in the direction of deceased. Appellant testified that due to the excitement at the time of the shooting he did not know whether deceased fired his revolver. Defendant also introduced evidence of threats made prior to the day of the shooting, against appellant. Certain statements, alleged to have been made by appellant after the shooting, were introduced in evidence. Reference to these is necessary and will be made later in the opinion in connection with an instruction given by the trial court.

No brief was filed in this court by appellant. In the motion for a new trial complaint is made because the trial court permitted the State to introduced evidence in rebuttal detailing the manner in which the body of deceased was removed. This evidence was material only in so far as it disclosed the position of the body and the revolver that was found on his person. It was proper evidence in chief. However, the trial court did not err in permitting the State to introduce it in rebuttal. The evidence did rebut certain evidence introduced by the defense as to whether the revolver was visible on the deceased. The question of permitting evidence to be introduced in rebuttal lies largely within the discretion of the trial court. [State v. Hall, 7 S. W. (2d) l. c. 1004 (3, 4).] The point is ruled against appellant.

The giving of instructions numbers 2, 9 and 9a are assigned as error. By Instruction No. 2 the jury were told that, "he who wilfully, that is, intentionally, uses upon another at some vital part a deadly weapon, as a shotgun must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death," etc. The instruction in substance is the same as the one approved in State

1090

v. Hart, 274 S. W. 385, 1. c. 386, 387, 309 Mo. 77. The objection made to the instruction is that it invaded the province of the jury. The same objection was made in the Hart case and the question was there fully considered and disposed of adversely to appellant's contention. We need not again consider the question. [See, also, State v. Caldwell, 231 S. W. 1. c. 615; State v. Grant, 144 Mo. 56, 45 S. W. 1. c. 1104.]

Instruction No. 9a reads as follows:

■ "The court instructs the Jury that if you find and believe from the evidence that the defendant, Wade Dollarhide, sought or brought on the difficulty or *voluntary* entered into the difficulty, then and in the case the defendant, Wade Dollarhide, cannot justify himself under the law of self-defense. It is for the Jury to say from all the facts and circumstances in this case whether or not it was necessary for the defendant to shoot the deceased, James Knight, to protect himself and prevent the deceased, James Knight, from killing him or doing him some great bodily harm."

Appellant was tried on a charge of murder in the first degree. The case was submitted to a jury on murder in the first and second degree and manslaughter. The instruction, as given, would constitute reversible error if appellant had been convicted of murder in either degree. A person may bring on or voluntarily enter into a fight or difficulty without a felonious intent to kill or inflict great bodily harm, and if in the course of the conflict it should become necessary to take the life of an adversary in order to save his own life he would be guilty of manslaughter and not murder. [State v. Eastham, 240 Mo. 241, 144 S. W. 1. c. 495; State v. Goddard, 146 Mo. 177, 48 S. W. 83.] ■ On a retrial, if the case is to be submitted to the jury on the question of murder in the first or second degree or both, the instruction should be modified so as not to deprive the defendant of the right of self-defense, unless the jury should find that he brought on or entered into the difficulty with the felonious intent to inflict great bodily harm or take the life of the deceased. [State v. Berkley, 92 Mo. 41, 4 S. W. 24; State v. Partlow, 90 Mo. 608, 4 S. W. 14; State v. Roberts, 280 Mo. 1. c. 681, 682, 217 S. W. 988; State v. Dunn, 120 S. W. 1179, 221 Mo. 530.]

■ Evidence was introduced, by the State, that appellant had made statements with reference to the homicide. One witness testified that appellant came to his home on the evening of the homicide and asked the witness to come to appellant's place, stating, "I want you to come down to my place." "I killed Jim Knight down there." "He came down there drunk and snapped his pistol at me and rubbed it under my nose." "I wanted to live as long as anyone and I beat him to it."

The sheriff of the county testified that he was present at the jail when the prosecuting attorney asked appellant about the shooting. According to this witness, appellant in response to questions, stated in substance that he had aimed the first shot high and the next shot he also aimed high at the deceased's head and neck and that then the deceased fell; that the third shot was an accident. The witness on cross-examination testified that appellant had said something about deceased having a gun but the witness did not recollect the words.

Herman Knight, son of the deceased, was present at the time of the shooting. At the trial he testified that appellant, immediately after the shooting, said: "I killed him deader than hell." Upon this evidence, introduced by the State, the court gave the following Instruction No. 9 which appellant assigns as error:

"If you find from the evidence that the defendant—made any verbal statements in regard to the case, or charge, upon which he is being tried, you should take such statements into consideration, with all the other facts and circumstances proven.

"What you may find from the evidence, if anything, that the defendant—said against himself the law presumes to be true, because said against himself but what you may find from the evidence, that he said in his own behalf, or in his own favor, you are not obligated to believe, but you may treat the same as true or false, as you find from the evidence that it is true or false, when considered in connection with all the other facts and circumstances in the case.

"Evidence, however, of verbal statements, made by a person charged with a crime, should be considered by a jury, with caution, on account of the liability of witnesses to forget, or misunderstand what was really said or intended."

We held a similar instruction erroneous in State v. Johnson, 333 Mo. 1008, 63 S. W. (2d) 1000, decided concurrently herewith. In the learned Attorney-General's brief the cases of State v. Hudspeth, 159 Mo. 178, 60 S. W. 136, and State v. Glazebrook, 242 S. W. 928, are cited as approving the instruction. The Glazebrook case was referred to in the Johnson opinion and noted that the instruction there given contained the essential elements omitted from Instruction No. 9 given in the case at bar. They are, that any statement or statements, alleged to have been made by defendant, should be considered altogether and that a defendant is entitled to what he said for himself, if true. [16 C. J. 634, sec. 1263; State v. West, 69 Mo. 1. c. 406; State v. Curtis, 70 Mo. 594.] The Hudspeth case is the only case we have been able to find where an instruction, similar to the instruction above quoted, was approved. However, an examination of the opinion will disclose that twenty-three instructions are copied into the opinion. They are all disposed of by the following statement: "Several of the State's instructions are criticised by the defendant, but we think them free from substantial objection, with the exception of

the twenty-second, which there was no evidence to support and it should not have been given." What objections were made to the instructions are not disclosed by the opinion. The Hudspeth case cannot, therefore, be considered good authority. It is evident that no consideration was given to the question here involved. The instruction given in the Johnson case, supra, and in this case does not follow the approved form. The parts that are in a defendant's favor were omitted. The instruction in the approved form is not recommended, but if given at all it should follow the approved form and should not be modified to the prejudice of a defendant. We desire to add the following cases to those cited in the Johnson case, where instructions containing the elements omitted from the instruction under consideration were approved. [State v. Young, 24 S. W. l. c. 1047, 119 Mo. l. c. 525; State v. Northington, 268 S. W. l. c. 58 (4, 5); State v. Mabry, 324 Mo. 239, 22 S. W. (2d) l. c. 641, 642 (8); State v. Hardin, 324 Mo. 28, 21 S. W. (2d) l. c. 761 (9). See, also, State v. Laliyer, 4 Minn. 368.]

For the error in giving Instruction No. 9, the judgment of the trial court is reversed and the cause remanded for a new trial.

PER CURIAM:—The foregoing opinion by WESTHUES, C., in Division Two is adopted as the opinion of the Court en Banc. All concur.