STATE v. CLAUDE WILLIAM MANNING, Appellant.—No. 40288.—202 S. W. (2d) 18.

Division One, May 12, 1947.

*Roscoe C. Patterson* for appellant.

479

*J. E. Taylor,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

CLARK, J.—Appellant, Manning, charged with the murder of George Vinson, was convicted of manslaughter and sentenced to a term of five years' imprisonment.

On the night of March 17, 1946, appellant with Claude Russell and two women went to a night club in Springfield, Missouri, about 8:00 P. M., where they were joined by another woman. About midnight Vinson and his brother-in-law, Linville Ice, came to the night club. All these persons and many others remained at the club, drinking liquor and dancing, until about closing time, 1:15 A. M. Appellant and his party left first and started to Russell's car which was standing near the club. About that time Vinson, apparently with little if any provocation, knocked a man down at the doorway of the club. While the proprietor and others were holding Vinson, some one told appellant that Vinson had threatened to whip him. Appellant went back and asked Vinson if he had made such a statement. Vinson said

he had not, but that he could and would whip him. Either appellant or Vinson suggested that they meet at Grant and Commercial Streets and fight it out. Then appellant and his party drove away in Russell's car. They passed the intersection of Grant and Commercial three times. On the third trip they saw Vinson and Ice standing beside the latter's parked truck. Russell, who was driving his car in which he, appellant and the women were riding, drove by without stopping. Ice and Vinson followed in the truck and tried to crowd the car off the road. The pursuit continued until Russell's car ran out of gasoline and was parked at the side of the road. Ice parked his truck a short distance in front of the car and both he and Vinson got out and started back toward the car. Ice had a tire tool in his hand. Vinson took off his jacket and threw it in the truck. Appellant testified that Vinson took something out of his pocket. Appellant got out of the car and, when Vinson was about six feet from him, appellant picked up some object from the floor of the car and threw it, striking Vinson in the forehead. Vinson fell unconscious, was taken to a hospital where he died several days later.

Appellant and Vinson had gone to school together and had known each other for several years. Appellant is about five feet eight inches tall and weighs about 160 pounds. Vinson was six feet two inches tall, weighed about 210 pounds and was a strong man. Several witnesses testified that Vinson bore the reputation of being a quarrelsome and turbulent man.

Appellant assigns as error: the refusal of the court to direct a verdict of acquittal on the ground of self defense and the giving of instructions 5 and 6.

 The first assignment is overruled. We hold that, under the evidence, the issue of self defense was for the jury.

Instruction number 5 is as follows:

 "The Court instructs the jury that although the jury may believe from the evidence that, prior to the time he was struck, the deceased had made threats against the defendant, yet this fact alone does not justify, excuse or palliate the offense or murder, *provided the jury shall further believe from the evidence that at the time deceased was struck he made no threats against the defendant, and made no attack or assault upon defendant and made no demonstration of violence against defendant.*"

Appellant complains of the latter part of the instruction, which we have emphasized.

The State concedes that the instruction has been disapproved in some of our decisions, but not for the reasons mentioned in appellant's motion for new trial, which, in substance, were: that the instruction was not based upon nor warranted by the evidence because at the very time the fatal blow was struck deceased was advancing upon appellant for the purpose of assaulting him.

We think the instruction tended to somewhat impair the issue of self defense which was submitted in other instructions and that this question was properly presented in the motion for new trial. True, there was no evidence that deceased made any threats *at the time* he was struck or that he actually assaulted appellant, but the evidence was that, shortly before, the deceased had threatened to whip appellant, had followed him and he and his brother-in-law were approaching appellant in a threatening manner, the brother-in-law being armed with some kind of a weapon.

Instruction 6 was as follows:

"The jury are instructed that in law it is the same offense to kill a bad man as it is to kill a good man and although the jury may believe from the evidence that deceased, *when intoxicated,* was a bad or quarrelsome man, this fact alone will not justify or excuse the defendant for the killing of deceased." [Emphasis ours.]

This instruction has been condemned by us in three cases. [State v. Rozell, (Mo.) 225 S. W. 931, 1. c. 934; State v. Archie, 301 Mo. 392, 256 S. W. 803, 1. c. 809; State v. Welch, 311 Mo. 476, 278 S. W. 755, 1. c. 759.]

The State does not contend that the instruction is proper, but again says that appellant's assignments in the motion for new trial are insufficient. In the motion for new trial appellant complained of instruction number 6 for the reasons: that it is a mere statement of an abstract principle of law; seeks to limit the evidence of deceased's bad reputation for being quarrelsome, turbulent and dangerous to times when he was intoxicated, although the uncontradicted evidence was that deceased bore such reputation at all times; and ▮▮ that the instruction seeks to minimize the effect of such evidence.

Although the motion did not use the term "comment on the evidence," it certainly raised that question by saying that the instruction seeks to limit the evidence and to minimize its effect.

In State v. Rozell, (Mo.) 225 S. W. 931, 1. c. 934, this instruction, in almost identical language, was held reversible error saying: "It singles out as influencing the act of defendants in killing deceased one item, that he was bad or quarrelsome, instead of submitting the facts upon this feature as a whole for the consideration of the jury. It is also clearly a comment on the testimony and, we think, reversible error." This ruling was adhered to in the other two cases heretofore cited.

The instruction is more unfavorable to defense in the instant case than it was in the Rozell case, for here the instruction limits the evidence of deceased's bad reputation to times when he was intoxicated while the evidence authorized no such limitation.

We hold that the giving of each of these instructions, numbers 5 and 6. constitute reversible error.

The judgment is reversed and cause remanded. All concur.