STATE OF MISSOURI, Plaintiff-Respondent, v. MARY ELIZABETH MARTIN, Defendant-Appellant, No. 43226—260 S. W. (2d) 536.

Court en Banc, September 14, 1953.

*Roscoe C. Patterson* and *Kirby W. Patterson* for appellant.

260

*J. E. Taylor*, Attorney General, and *Jack Fleischaker*, Assistant Attorney General, for respondent.

LEEDY, J.—An exhaustive opinion prepared by Coil, C., in Division I on submission of this case in that division, correctly determines the issues on this appeal, and we adopt it as our own, as set forth below (quotation marks omitted):

Defendant was convicted of second degree murder and appealed from a judgment sentencing her to ten years in the penitentiary. She contends that the trial court erred in giving and refusing instructions.

Defendant, Mary Martin, and deceased, Catherine Brown, engaged in a quarrel and fight which resulted in the death of Catherine from a knife wound which penetrated her heart. Defendant and deceased were on unfriendly terms, evidenced by a series of incidents which sprung from the relations over a period of years between deceased and defendant's husband. On the fatal Sunday, there were two baseball games between teams from Joplin and Springfield, one at the high school stadium and a subsequent one at Silver Springs Park. Defendant and deceased attended both. They had an altercation at the first. Later, at the second game, defendant and some other persons were standing at the driver's side of the McAdams automobile which was inside the ball park and behind the grandstand. Deceased stood at or entered the opposite side of the McAdams car. Accounts vary as to subsequent events. There was substantial evidence, however, that defendant went to deceased and held a knife against her throat; that a fight ensued during the course of which defendant stabbed deceased with the knife which she admittedly held in her hand; and that deceased's death was caused by a penetrating knife wound into the heart inflicted by defendant.

Defendant's testimony as to the events immediately preceding and during the course of the fight was that while she stood at the driver's side talking with Mrs. McAdams, Catherine, the deceased, entered the front seat from the opposite side; that Catherine made a remark importing that defendant's husband was the father of Catherine's child; that when the remark was repeated, defendant said, "Catherine, will you please leave me alone"; that when Catherine again repeated the remark defendant walked around the car to talk with deceased; that when she arrived at the front door Catherine hit her on the head, defendant struck back and at the same time pushed Catherine back into the front seat; that Catherine reached for something, whereupon defendant removed a knife from her (defendant's) pocketbook; that they began fighting, pulling hair, shoving, and hitting; that some men, including defendant's husband, separated them; that she (defendant) did not have any intention of killing or injuring Catherine and never did know that she struck Catherine with the knife. Some eyewitnesses of the fight said they didn't know Catherine had been struck with a knife. Defendant remained at the ball game with her husband and some time later returned home where she was informed of the death of Catherine and was arrested.

The trial court instructed on murder in the second degree, manslaughter, and self-defense. No complaint is made of these main instructions. Instruction 3 was given at the request of the state: "The Court instructs the jury that the law presumes that every person intends the natural and probable consequences of his own voluntary acts. And if he uses upon another a deadly weapon at a vital part of the

body, he is presumed to intend death or great bodily harm to the person against whom such weapon is used.''

Defendant attacks this instruction for the reason, among others, that it predicates a presumption of intent to kill or do great bodily harm upon the mere ''use'' as opposed to ''intentional use'' of a deadly weapon. If this construction of the language used is correct, then indeed the instruction is, for that reason alone, erroneous. For whatever else may be said about instructions concerning presumptions of intent, it is at once obvious that the ''presumption'' stated does not arise except it be predicated upon an intentional act. The ▮▮▮ question in this respect is whether the jury could reasonably understand from both sentences of the instruction that any other than a voluntary or intentional use of a deadly weapon was encompassed. The view we take makes it unnecessary to determine that question.

We shall, for further discussion, consider instruction 3 as though the word ''intentionally'' preceded the word ''uses'', so that for our purposes the second sentence of the instruction begins: ''And if he *intentionally* uses upon another'', etc. We shall further assume for the present that some instruction on this subject was proper.

It may be that as an abstract, general proposition instruction 3 correctly states the law. There is a universally recognized rule of law that, at least in the absence of evidence to the contrary, a sane man is presumed to intend the natural and probable consequences of his intentional acts. And it follows that this rule in general application results in the conclusion that, in the absence of evidence to the contrary, one who intentionally with a deadly weapon stabs another in the heart is presumed to intend to kill or do great bodily harm. But a review of the cases in this state on this question justifies the assertion that we have not treated this presumption as a conclusive one in the sense that it is a rule of substantive law which applies regardless of facts and which cannot be contradicted by evidence to the contrary. At least this is true as to instructions on the subject which deal with both intent to kill and malice. In cases in which instructions have been approved, the rule (as to one intending the natural or probable result of his intentional acts) has been stated with a limiting phrase, such as ''in the absence of qualifying facts'' or ''in the absence of evidence to the contrary''. And the abstract proposition stated in such instructions has been more often than not specifically applied to the facts of a particular case. Illustrative of such an approved instruction is one in State v. Hudspeth, 159 Mo. 178, 195, 196, 60 S.W. 136, 140: ''The court further instructs the jury that he who willfully (that is, intentionally) uses upon another, at some vital part, a deadly weapon, as a loaded shotgun, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act; and,

if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart. If, therefore, the jury believe from the evidence that the defendant took the life of Josiah W. Kessner by shooting him in a vital part with a shotgun loaded with gunpowder and leaden balls, with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or provocation, then such killing is murder in the first degree; and while it devolves upon the state to prove the willfullness, deliberation, premeditation, and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proven by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and, if the jury can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree.''

Instructions in somewhat similar form, containing words of limitation which point up the nonconclusive nature of the ''presumption'', have been approved, against attacks on various grounds, in many cases. Among them: State v. Dollarhide, 333 Mo. 1087, 1089[2], 63 S.W. 2d 998, 999[3]; State v. Hart, 309 Mo. 77, 84, 274 S.W. 385, 386; State v. Caldwell, Mo. Sup., 231 S.W. 613, 615; State v. Little, Mo. Sup., 228 S.W. 793, 797[2]; State v. Allen, 290 Mo. 258, 274, 234 S.W. 837, 841[2]; State v. Wansong, 271 Mo. 50, 56, 195 S.W. 999, 1001; State v. Keener, 225 Mo. 488, 495, 125 S.W. 747, 749; State v. McCarver, 194 Mo. 717, 728, 742, 92 S.W. 684, 686, 691; State v. Grant, 152 Mo. 57, 64, 69, 53 S.W. 432, 433, 434; State v. Reed, 117 Mo. 604, 612, 23 S.W. 886, 888; State v. Landgraf, 95 Mo. 97, 104, 8 S.W. 237, 240.

We are cognizant of the fact that upon close analysis instant instruction 3 does not in so many words deal with ''felonious intent'' and makes no reference to any presumption of malice. Actually, the only ''presumptions'' specifically stated are the ''intent to kill'' and the ''intent to do great bodily harm''. Now it is true that to sustain a conviction for murder there must be an intent to kill, both in the sense that the act must have been willful (i.e., intentional, not accidental), and in the sense that an intent to kill forms a part of ''felonious intent'' or a ''criminal intent''. But it is not the killing alone which the law condemns as a crime; it is the particular manner in which the killing is done. Thus, any instruction which speaks of a presumption that one intended to kill or do great bodily harm would be understood as meaning that one intended to kill feloniously. In other words, when an instruction says one ''is presumed to intend death'', the meaning must be that one is presumed to intend death by a mode which is against the admonition of the law.

We are of the opinion, therefore, that instruction 3 is erroneous. Its effect is to inform the jury that the law conclusively presumes (not subject to being contradicted) that one who intentionally uses a deadly weapon at a vital part of the body of another intended to kill such other in a mode condemned by the law. The instruction contains no such phrase as "in the absence of qualifying facts" or "in the absence of evidence to the contrary." As drawn, the instruction is reasonably subject to a construction which eliminates self-defense, in effect directs that evidence which may negative felonious intent and malice be ignored, and makes it reasonable for the jury to conclude that they *must* find that defendant intended to kill against the admonition of the law if they found an intentional stabbing in the heart by use of the knife in evidence.

Instructions must be read together as an entire charge. As noted, it is conceded that the jury was in the main instructions properly charged on second degree murder, manslaughter and self-defense. Under instruction 1 the jury was informed that before defendant could be convicted of murder in the second degree, the jury must find that defendant stabbed deceased *willfully, feloniously, premeditatedly, and of malice aforethought*; and the italicized words and phrase were defined. Under instruction C the jury was informed of defendant's right to self-defense and, among other things, "the defendant may have killed deceased, and be innocent of any offense against the law." But the nature of the error pointed out in instruction 3 demonstrates that these other instructions did not necessarily, nor may we say probably, eliminate the effect of instruction 3. It may be that instruction 3 had nothing to do with defendant's conviction; yet we may not with any degree of assurance say what effect the instruction had upon the jury.

We have assumed that some instruction on presumption of the intent was proper in this case. Defendant contends that no such instruction is proper (and that any such is prejudicial) in a case like this in which all the facts relating to the occurrence in question have been given in evidence by eyewitnesses. Most instructions dealing with abstractions are usually undesirable in criminal cases. State v. Graves, 352 Mo. 1102, 182 S.W. 2d 46. Apparently all available facts pertaining to the altercation in the instant case were adduced by various eyewitnesses to the events which transpired from the beginning to the end of the fight. There was testimony of the defendant that she did not intend to kill or injure deceased and that she did not know she had used a knife. This was corroborated to some extent by eyewitnesses who said they didn't see a knife and didn't know deceased had been wounded, and perhaps also by defendant's conduct after the altercation. (In passing, we observe that, considering all of defendant's testimony, she meant that she didn't intend to kill or injure because she didn't know she had done so. In other words, the

issue actually raised was as to whether the *use* of the knife was intentional.) Be that as it may, however, opposing this testimony was other testimony that defendant with a knife in her hand struck deceased and inflicted a wound in the heart.

Under such state of the evidence, was there necessity or desirability for an instruction dealing with a *presumption* as to the intent of defendant?

In civil cases we hold that a presumption is a rule of law (unless it is a conclusive presumption, i.e., a rule of substantive law) which puts the burden of producing some substantial evidence on the party presumed against; that when substantial evidence, however slight, is adduced by the opponent, the presumption disappears and the triers of fact receive the issue free of any presumption; that while the facts giving rise to the presumption in the first place remain in the case, those facts and those to the contrary are for the jury. Michler v. Krey Packing Co., 363 Mo. 707, 253 S.W. 2d 136, 139[1-4]. And in civil cases, we condemn instructions as confusing and misleading which tell the jury what is "presumed". And hold that presumptions are for the court, not the jury. Lampe v. Franklin American Trust Co., 339 Mo. 361, 379[5], 96 S.W. 2d 710, 720[12, 13]; Dove v. Atchison, T. & S. F. R. Co., 349 Mo. 798, 803, 163 S. W. 2d 548, 550[3-5]. And we have said: "To say, however, in an instruction to a jury, in the case of a rebuttable presumption, and when evidence has been introduced upon the question, that 'the law presumes' so and so, and that such presumption 'must be overcome' or 'overthrown' by evidence, is sometimes useless, sometimes prejudicial, and always illogical. As suggested under (a) there are Missouri decisions not in accord with this conclusion." State ex rel. Detroit Fire & Marine Ins. Co. v. Ellison, 268 Mo. 239, 257, 187 S.W. 23, 26.

But a review of some of the criminal cases dealing with the propriety of instructions on presumptions will indicate that we have sometimes taken a different view. Yet in State v. Galbraith, 330 Mo. 801, 50 S.W. 2d 1035, we held an instruction erroneous which said that if defendant was the owner of an automobile in which he was riding but which was being driven by another at the time of defendant's arrest, the law presumed that defendant was directing the operation of the car and presumed the agency of the driver—unless "in the light of such presumption" the jury found that defendant did not direct the operation of the car. We held the instruction erroneous because its effect was to create both a presumption of guilt and innocence and required defendant to overcome a presumption of guilt by proof of innocence. We said, at page 1036 (50 S.W. 2d): "It may be added that the trend of the recent decisions of this court has been to root out of our criminal procedure instructions that may be classified as being comments on the evidence. In the case of State v. Swarens, 294 Mo. 139, 241 S.W. 934, the court in banc condemned an instruction

that told the jury that the possession, by defendant, of recent stolen property, raised a presumption of guilt. This instruction had been approved by the earlier cases. Instructions that the flight of defendant raises a presumption of guilt have been condemned by this court. State v. Hogan (Mo. Sup.) 252 S.W. 387, loc. cit. 389. Other instructions, condemned as comments on the evidence, may be found in State v. Cole, 304 Mo. loc. cit. 115, 116, 263 S.W. 207.

"From the evidence enumerated in the criticized instruction, the jury might have inferred the fact that appellant was directing the operation of the car, and therefore guilty of unlawfully transporting 'hooch.' But the court should not have instructed that a presumption of guilt arose."

In State v. Duncan, 336 Mo. 600, 613, 80 S.W. 2d 147, 154, in holding an instruction erroneous on extrajudicial statements made by defendant, it was said: "Furthermore, it has been held by this court in numerous cases that an instruction telling the jury what the presumption of law is with regard to a disputed question of fact on which they are required to pass is error: as in instructions on flight, State v. Moberg, 316 Mo. 647, 291 S.W. 118; on the recent possession of stolen property, State v. Swarens, 294 Mo. 139, 241 S.W. 934, 936; and on the recent possession of a forged instrument, State v. Andrews, 297 Mo. 281, 287, 248 S.W. 967, 969."

And as to the matter of instructing on the presumption that a killing is murder in the second degree, we have unmistakably ruled that it is error to instruct on this presumption in cases where eyewitnesses fully describe the occurrence resulting in the homicide. In State v. Swearengin (1916), 269 Mo. 177, 186, 190 S.W. 268, 271, we recognized the existence of the presumption stated in an instruction which in effect told the jury that if one intentionally killed another with a deadly weapon, the law presumed the killing to be murder in the second degree in the absence of evidence to the contrary; and that the burden was upon defendant to meet or repel such presumption unless the state's evidence showed otherwise. But the instruction was held erroneous because in that case "All of the circumstances of the homicide here are known, and shown upon the record by the testimony of eyewitnesses." It was said the presumption was "used in the face of proof of the fact presumed" and that "No earthly reason or necessity exists for indulging any presumption as to whether the killing was or was not murder in the second degree".

State v. Burns (1919), 278 Mo. 441, 447, 213 S.W. 114, 116, in passing upon the propriety of a similar instruction, said: "This instruction regarding presumption of guilt in trial for murder in the second degree is never permissible when the evidence shows what the facts are as it did in this case. 'Presumptions are invoked only when evidence is lacking'". And in State v. Davis, Mo. Sup., 217 S.W. 87, 90, it was said pertaining to a similar instruction: "The 'facts' were

all before the jury, and hence there was no room for any such presumption.'' The same rule was applied in State v. Malone (1931), 327 Mo. 1217, 1234, 39 S.W. 2d 786, 793, and State v. Bolhofner (1935), 336 Mo. 1155, 1159, 82 S.W. 2d 894, 895. The rule of the Swearengin case was recognized in State v. Eason (1929), 322 Mo. 1239, 1251, 18 S.W. 2d 71, 77, but it was there held that because the facts were not disclosed by eyewitnesses, the instruction was proper. And the rule as to presumption of murder in the second degree has been stated as: '' ' ' ''Where a homicide is intentionally committed with a deadly weapon used upon a vital part of the body *and there is no witness to the occurrence,* murder in the second degree is presumed in the absence of evidence tending to show a different grade of offense or that such killing was justifiable or excusable''. State v. McCracken, 341 Mo. 697, 108 S.W. 2d 372, 374; State v. Eaton, Mo. Sup., 154 S.W. 2d 767.' State v. Lyle, 353 Mo. 386, 182 S.W. 2d 530, loc. cit. 533.'' (Italics ours.) State v. Battles (1948), 357 Mo. 1223, 1228, 212 S.W. 2d 753, 756.

Now, if it be that a presumption that a killing is murder in the second degree differs in some respects from the presumptions contained in instructions on intent and malice, still the fact remains that the reason for the condemnation of the ''second degree'' instructions was that where the facts were in evidence, there was no room for a presumption. It would seem, therefore, in so far as the propriety of instructions concerning presumptions is concerned, that the differences in the type of presumptions are unimportant and not controlling; that the important and controlling consideration is the fact that they are presumptions. This conclusion is supported by State v. Malone, supra, at p. 793, (39 S.W. 2d), where we said: ''Moreover, the facts and circumstances attending the killing were detailed by eyewitnesses, and the *question of whether or not the homicide was murder,* and if so the grade thereof did not rest upon presumption but upon the evidence.'' (Italics ours.)

But the cases dealing specifically with instructions on presumption of intent and malice have not always made the approval or disapproval of an instruction depend upon whether the facts of the homicide were detailed by eyewitnesses. Some of them have so held, others have approved an instruction on the subject without specific reference to the proposition of whether it was proper to instruct on presumption in the face of facts. In State v. Wansong (1917), supra, in an opinion by the author of State v. Swearengin, supra, the court approved an instruction telling the jury that the law presumed that an assault was made with malice aforethought and with intent to kill, upon proof of intentional use of a deadly weapon at a vital part of the body of another, without just cause or provocation, and unless the facts and circumstances in evidence showed to the contrary. The court there recognized the proposition that such an instruction might be error in

a case, wherein "there was countervailing proof of facts which negatived the alleged intent to kill". But it was said in effect that there was a necessity for the presumption in certain cases, like that one, else there would be no "proof of felonious intent".

In State v. Cole (1924), 304 Mo. 105, 117, 263 S.W. 207, 211, the instruction considered and the holding were: " 'In order to convict the defendant of murder in the first degree, you must believe from the evidence that the defendant shot Joseph J. Epley intending to kill him. In this connection, however, you are instructed that in the absence of qualifying circumstances and facts, a person is presumed to have intended the natural, ordinary and probable results of his acts. Wherefore, if you believe from the evidence that the defendant, Casper Cole, intentionally shot Joseph J. Epley in a vital part, with a deadly weapon, to wit, a shot gun, from which death ensued, you will find that he intended to kill, unless the facts and circumstances given in evidence show to the contrary.'

"It is claimed by the state, that the above instruction is approved in the following cases: State v. Grant, 152 Mo. loc. cit. 64-65, 53 S.W. 432; State v. Hudspeth, 159 Mo. loc. cit. 195-196, 60 S.W. 136; State v. Schmulbach, 243 Mo. loc. cit. 538, 147 S.W. 966. The most casual reading of the instructions considered in the cases just cited will clearly indicate that they are wholly unlike said instruction 7, do not convey the same idea, and deal with entirely different questions. Aside from said instruction 7 containing an erroneous statement of abstract propositions of law, it has been repeatedly condemned in cases of this character. The wife of deceased, and defendant, both claim to have been present at the time and place of shooting, and each undertook to detail what occurred at that time. In view of the direct testimony of above parties, there was no room for such a presumption, even if the instruction had been couched in proper language. State v: Swearengin, 269 Mo. 177, loc. cit. 188, 190 S.W. 268; State v. Wansong, 271 Mo. loc. cit. 57, 195 S.W. 999; State v. Burns, 278 Mo. loc. cit. 446-447, 213 S.W. 114; State v. Davis, (Mo. Sup.) 217 S.W. loc. cit. 90. * * * Query? If every man charged with crime is presumed in law to be innocent until shown to be guilty, and this presumption continues throughout the trial, how can such presumption be reconciled with those mentioned in this class of instructions?" (304 Mo. 118.)

But in State v. Hart, supra, (1925), 274 S.W. 386, 387, we approved an instruction (on intent and malice being presumed) without reference to the fact that eyewitnesses described the occurrence of the homicide. As against the contention that "the question of intent is one of fact which must be submitted to the jury", we held in effect that because intent and "the operation of the criminal's mind" cannot be proved by direct evidence, "courts must have recourse to presumptions which arise from proven facts." We held, apparently for that rea-

son, that it was proper to instruct the result of the rule of law that "every one is presumed to intend the natural and probable consequences of his own intentional act" and we pointed out that the instruction by the use of the word "intentionally" eliminated "accidental" and by the use of the phrase "in the absence of qualifying facts", "the instruction thus eliminates every feature of such an act which would prevent the presumption of malicious intent."

And in these cases, and probably others, similar instructions have been approved in "eyewitness" cases without specific reference by the court to that fact. State v. Keener, supra (instruction attacked on ground that it failed to submit whether the knife used was a deadly weapon); State v. Allen, supra; State v. Dollarhide, supra; State v. Little, supra.

In State v. Malone, supra, (1931), 39 S.W. 2d 793, we said that the following part of an instruction was "correct as a legal proposition": "You are instructed that one who wilfully, that is, intentionally, uses upon another at some vital point a deadly weapon, such as a pistol, must, in the absence of qualifying facts, be presumed to know that the effect is likely to produce death, and, knowing this, must be presumed to intend death, which is the probable consequence of such an act; and if a deadly weapon is so used upon another without just cause or provocation, he must be presumed to do it wickedly and from a bad heart." We also said, however, that this statement of the proposition was unnecessary. We reversed and remanded the case because in applying the unnecessarily stated legal proposition to the facts, the claim of self-defense was ignored and because, as noted heretofore, the facts and circumstances were detailed by eyewitnesses and whether the killing was murder didn't depend upon presumption.

In State v. Creighton, (1932), 330 Mo. 1176, 1200, 52 S.W. 2d 556, 565, we said of an instruction like the one set forth above in State v. Malone: "Complaint is made of instruction No. 10, which said that one who intentionally uses upon another at some vital part a deadly weapon must be presumed to intend death, etc. Appellant maintains this instruction was unnecessary and improper, and tended to minimize his defense of self-defense. We think this criticism is just. State v. Malone, supra, 327 Mo. 1217, 39 S.W. (2d) loc. cit. 793. The facts attending the homicide were detailed by eyewitnesses, and the appellant did not deny its commission, or claim it was unintentional. He invoked only the defenses that it was done on either just or lawful provocation, and that he killed in self-defense, all of which predicate an intent to kill or inflict bodily harm. In these circumstances, no instruction on the presumption was called for." It was pointed out above that there was no claim that the killing was unintentional. And, in State v. Little, supra, in approving a similar instruction, some significance was attached to the fact that defendant claimed he did not intend to shoot deceased. Little was an eyewitness case, disposed of without specific

consideration of that fact. The author of the Little opinion later wrote State v. Cole, supra, where this type instruction was condemned and one of the reasons for condemnation was that there was no room for a presumption in view of direct testimony by eyewitnesses. And in State v. Allen, supra, one of the judges who had concurred in State v. Little, supra, said in a concurring opinion in the Allen case (234 S.W. 845) : ''On more mature consideration I am inclined to think this sort of instruction was not proper in the case of State v. Little, 228 S. W. loc. cit. 797, cited and approved in the majority opinion, for the reason that the person there assaulted survived the attack, and he and his wife testified at the trial to all that took place at the time of the shooting. When the facts were developed by eyewitnesses, there was no room for the indulgence of any presumption of malice on the part of defendant by the use of a deadly weapon.''

In State v. Graves, supra, 182 S.W. 2d 57, we said of an instruction similar to that in State v. Hart, supra, ''In our opinion it would be better to eliminate such abstractions from criminal instructions. But the instruction states the law and has been approved. State v. Hart, Div. 2, 309 Mo. 77, 274 S.W. 385, 386, 387(5) ; State v. Dollarhide, 333 Mo. 1087, 1089(2), 63 S.W. 2d 998, 999(3).'' No specific reference was made to the fact, but the statement of the case shows that it was not a case in which there was direct testimony by eyewitnesses.

In State v. Taylor (1947), 356 Mo. 1216, 205 S.W. 2d 734, defendant was convicted of second degree murder. Deceased was killed by a rock which crushed and pierced his skull. A rock with blood on it was found at the scene of the killing. This rock fit the depression in deceased's skull. An eyewitness testified to facts from which the jury could and did find that defendant killed deceased with the rock. But the eyewitness, due to his position, did not see defendant use the rock. This was not a case, therefore, wherein all the facts of the occurrence resulting in the fatality were described by eyewitnesses. Furthermore, the defendant denied flatly that ▆▆▆ he had had any altercation of any kind with deceased. Under these facts, the court approved these instructions, (205 S.W. 2d 736) :

'' '* * * that if one person intentionally uses upon another a deadly weapon (that is, a weapon which, as used, is likely to produce death) at a vital part of the body, and in such a manner that death is likely to result, he is presumed by such use to have intended to kill, and if he so uses such weapon without just cause or provocation he is presumed to have acted with malice aforethought. Whether the said rock was a deadly weapon and whether such weapon was used in such a manner and with such intent by the defendant on the occasion under consideration, are matters to be determined by you from all the facts and circumstances in the case.'

''The court further instructed the jury in Instruction No. 7 : '* * * that the law presumed that a person intends the natural and probable

consequences of his acts, and if you believe from the evidence in the case that the defendant Dill Taylor *assaulted* with a deadly weapon, a large rock, Mattie Keith, in a vital part of the body, the law presumes that defendant, Dill Taylor intended to kill Mattie Keith.' '' (Italics ours.)

We said: ''Such instructions are proper under the particular facts of this case and they correctly state the law. 'It is universally held that everyone is presumed to intend the natural and probable consequences of his own intentional act. * * * It follows that where one uses a weapon likely to produce death in making an assault upon another, and death ensues, the one who commits the act is presumed to intend death.' State v. Hart, 309 Mo. 77, 274 S.W. 385, 387. Similar instructions were approved in State v. Dollarhide, 333 Mo. 1087, 63 S.W. 2d 998; State v. Grant, 144 Mo. 56, 45 S.W. 1102; State v. Silk, 145 Mo. 240, 44 S.W. 764, 46 S.W. 959; State v. Graves, 352 Mo. 1102, 182 S.W. 2d 46. And see Raymond on Instruction, §§ 5986, 5990. The objections to an instruction which states that one who intentionally uses upon another at some vital spot a deadly weapon must be presumed to intend death noted in State v. Creighton, 330 Mo. 1176, 52 S.W. 2d 556, are not apposite here because of the difference in the facts. In that case the defendant did not deny the shooting. In this case the defendant does deny striking deceased with the rock. In that case defendant did not claim the shooting was unintentional, but that it was intentional relying on just or lawful provocation and self defense. In this case there is no such defense, merely a flat denial by defendant that he had any altercation of any kind with deceased.

''We hold under the facts of this case the court may properly instruct that defendant is presumed to intend the natural consequences of his voluntary act without invading the province of the jury. See 23 C.J.S., Criminal Law, § 1183. And the court may properly instruct as to the presumptions arising from the facts on the issue of intent. See 23 C.J.S., Criminal Law, § 1222.'' (205 S.W. 2d 736, 737.)

It is apparent from the review of the foregoing cases that because ''mental intentions are not tangible things and often must be inferred from the circumstances, it has been considered proper'' in some cases ''for the court, in developing the law of the case to the jury, to disclose to them the force and effect of a *presumption* which may be drawn from the defendant's intentional use of a deadly weapon at some vital part of the body.'' State v. Littlejohn, 356 Mo. 1052, 1057, 204 S.W. 2d 750, 753. It is also apparent, however, that although, as demonstrated, it has been considered proper to so do even in cases in which eyewitnesses fully described the occurrence during which the homicide took place, nevertheless, so far as the opinions disclose, wherever this court has passed directly upon the propriety of such an instruction in the light of the principle that a presumption has no place in the presence of the actual facts disclosed to the jury, such in-

structions have been condemned. Furthermore, it seems clear that the mere fact that "mental intentions are not tangible things and often must be inferred from the circumstances" does not furnish any basis for a necessity to, or even a basis making it proper to, instruct on the presumption in question. Any difficulty arising by reason of the necessity for and the propriety of making reasonable inferences from the facts and circumstances in evidence, is surmounted by an instruction directed to the *right* of the jury to so do. In other words, an instruction on presumption carries a different and broader meaning and effect, than an instruction pertaining to the right to make reasonable inferences from the evidence; and this is true even though the latter may be included within the former. The fact remains they are different, and one is not a proper substitute for the other.

Now, as we have heretofore indicated, neither the rule or law to the effect that generally a sane man intends the natural and probable consequences of his intentional or voluntary acts, nor the resulting or corollary application of it pertaining to the presumption as to intent and malice arising from the intentional use of a deadly weapon at a vital part of the body, has been applied or instructed upon as a rule of substantive law, i.e., a conclusive presumption. Thus, these "presumptions" or this "presumption" (in reality there is only one involved) is either that type of presumption (said by an eminent author to be the only true presumption, Wigmore on Evidence, Third Ed., Vol. IX, § 2491, pp. 288, 291), the effect of which is to call for the application of a rule of law which requires a jury to reach a conclusion in the absence of evidence to the contrary, but when substantial contrary evidence has been adduced the presumption disappears as such, even though the facts, which in the absence of contrary evidence would call for the invocation of the presumption, remain; we say it is either that type, or it is the type of presumption sometimes referred to as a "presumption of fact", in the sense that logical reasoning requires or permits a certain conclusion from certain facts shown, but which places no duty on the opposite party to produce substantial evidence to the contrary. But whatever the "presumption" be called, it seems reasonable and logical to say that, while the essential elements of an alleged crime need not be proved by direct evidence but may be inferred from all the facts and circumstances in evidence, yet, at least, where the full facts concerning a homicide have been adduced in evidence by the testimony of eyewitnesses, the existence of any essential element does not depend upon the facts aided by a presumption, but upon the facts alone. And that it is improper, and often prejudicial, in such cases, to give artificial probative force to the "presumption", i.e., to treat the "presumption" as evidence which must be overcome by evidence to the contrary.

Our conclusion is that, at least in those cases where the facts are fully developed by eyewitnesses, instructions on presumptions of in-

tent and malice, should not be given. It follows that instruction 3, or a similar instruction covering its subject matter, should not have been given in the instant case. Of course, whether the giving of such instructions, even in "eyewitness" cases, would constitute reversible error, will necessarily depend upon the particular instruction and the facts of a particular case. As heretofore noted, however, the giving of instruction 3 in the instant case was reversible error.

Defendant also contends that the court erred in giving instruction 4. We need not set out the instruction. Suffice to say that it is one the purpose of which is to eliminate self-defense as a defense, predicated upon a finding by the jury either that defendant killed deceased "unnecessarily and when she did not have reasonable cause" to apprehend that deceased intended to kill or do great bodily harm to defendant, or that defendant willfully engaged in a quarrel with deceased for the purpose of avenging previous wrongs and with the willful intention of killing or doing great bodily harm. The instruction contains the preliminary statement that "words and epithets, no matter how vile or insulting, or threats alone do not justify an assault". The instruction in its entirety is very similar to that given and approved in State v. O'Leary, Mo. Sup., 44 S.W. 2d 50, 52.

There, as here, defendant contended that by reason of the particular mention of "words and epithets" the instruction singled out a portion of the evidence, unduly commented upon it, and minimized or impaired defendant's theory of self-defense. In the O'Leary case there were three instructions pertaining to self-defense. One of which fully covered that subject from defendant's viewpoint; another covered the jury's right to consider all prior transactions between defendant and deceased in determining defendant's apprehension and the reasonableness thereof, and the third instructed, among other matters, that words and epithets alone did not justify an assault. It was there held that the three instructions read together properly hypothesized appropriate facts. Instant defendant says that here, unlike in the O'Leary case, there was no instruction telling the jury that all transactions between defendant and deceased were to be considered in determining whether defendant was apprehensive and the reasonableness of any such apprehension; and that instruction 4 is thereby in the category of those condemned in State v. Manning, 356 Mo. 477, 480, 202 S.W. 2d 18, 19; State v. Matthews, Mo. Sup., 111 S.W. 2d 62, 65; State v. Creighton, supra, 52 S.W. 2d 565; State v. Malone, supra, 39 S.W. 2d 794; and State v. Yates, 301 Mo. 255, 265, 256 S.W. 809, 812.

Care should be exercised in charging the jury to assure that defendant's theory of self-defense is not improperly explained away, minimized, or impaired. There are other instructions in the instant case, however, which may bring instant instruction 4 within the general rule of the O'Leary case; and this, even though there is no instruc-

tion on the specific subject of prior transactions as was instruction 7 in the O'Leary case. However, inasmuch as this case must be reversed and remanded, we have no doubt that at a retrial the instructions on self-defense will make clear to the jury that the words and epithets of deceased and other prior transactions between deceased and defendant may be considered by the jury in determining defendant's apprehension and the reasonableness thereof.

Defendant further contends that instruction 4 assumed that defendant provoked a quarrel with deceased for the purpose of killing her. There is some basis for this criticism, even though the instruction may not be reversibly erroneous. In any event, the instruction should be so drawn as to obviate any reasonable contention that it assumes that defendant did willfully provoke a quarrel.

Defendant's final contention is that "The trial court erred in refusing to instruct on the evidence of witnesses as to alleged previous conversations and statements of defendant, as requested in writing by defendant."

At the close of all the evidence, defendant filed a written motion requesting the court to instruct "upon the law applicable to the following subjects: * * *

"Seventh. The law applicable to the evidence of witnesses as to alleged previous conversations and statements of defendant." Defendant apparently formulated and submitted written instructions upon some of the subjects mentioned in the motion but offered none upon subject "Seventh". Apparently, this referred to defendant's written statement taken at the police station immediately after her arrest.

The matter of the voluntariness of a confession need not be covered by an instruction, as part of the law of the case without a request for such. A "request for an instruction" consists of formulating and presenting to the court a written instruction with the request that it be given. State v. Lee, 361 Mo. 163, 233 S.W. 2d 666, 668[4,5]. Here, inasmuch as there was no sufficient request for such an instruction, the trial court did not err in failing to prepare and give of its own motion an instruction on this subject in the hope that it would cover the matters which counsel might have had in mind.

Reversed and remanded. All concur.